1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

06/25/2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DG ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIA ELENA HERNANDEZ, an
individual,

             Plaintiff,

             vs.

SELECT PORTFOLIO SERVICING, INC.,
a Utah corporation; BANK OF AMERICA,
N.A., a national banking association; BANK
OF NEW YORK MELLON, f/k/a BANK
OF NEW YORK, a Delaware corporation;
and ALL PERSONS UNKNOWN Claiming
Any Legal or Equitable Right, Title, Estate,
Lien or Interest in and to the Real Estate
Property Known as 293 Bellafonte Court,
Camarillo, ca 93012,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 15-01896 MMM (AJWx)

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS

      On February 6, 2015, Maria Elena Hernandez filed this action against Select Portfolio Servicing,

Inc. ("SPS"), Bank of America, N.A. ("BofA"), and various fictitious defendants in Ventura Superior

Court.[1]  On March 13, 2015, SPS and BofA removed the action to federal court, invoking the court's

diversity jurisdiction under 28 U.S.C. § 1332.[2]  On April 8, 2015, Hernandez filed a first amended

---

[1]Notice of Removal ("Removal"), Docket No. 1 (Mar. 13, 2015), Exh. 1 ("Complaint").

[2]Removal at 1.

1   complaint, adding Bank of New York Mellon ("BNYM") as a defendant and alleging claims for (1)

2   wrongful initiation of foreclosure proceedings in violation of California Civil Code § 2924(a)(6); (2)

3   dual tracking in violation of California Civil Code §§ 2923.6; (3) quiet title; (4) declaratory relief under

4   California Code of Civil Procedure § 1060; (5) failure to exercise due diligence before recording a notice

5   of default in violation of California Civil Code § 2923.5; (6) violation of California's Unfair

6   Competition Law ("UCL"), California Business & Professions Code § 17200; and (7) negligence.[3]

7       On April 22, 2015, defendants filed a motion to dismiss the first amended complaint for failure

8   to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure.[4]   Hernandez opposes the motion.[5]   Pursuant to Rule 78 of the Federal Rules of Civil

10  Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral

11  argument; the hearing calendared for June 29, 2015, is therefore vacated, and the matter taken off

12  calendar.

13

14                          **I.  FACTUAL BACKGROUND**

15  **A.      Facts Alleged in the First Amended Complaint**

16      Hernandez contends that she is the owner of real property located at 293 Bellafonte Court,

17  Camarillo, California 93012.[6]  She purchased the property in 2006, using the proceeds of a $385,000

18  loan from Countrywide Credit that was secured by a deed of trust on the property.[7]   On April 5,

19  2007, Hernandez refinanced the loan with Countrywide Home Loans, Inc. ("Countrywide"); the

20  refinance loan, which was in the amount of $400,000, was also secured by a deed of trust on the

21

22  _____

23      [3]First Amended Complaint ("FAC"), Docket No. 14 (Apr. 8, 2015).

24      [4]Motion to Dismiss First Amended Complaint ("Motion"), Docket No. 18 (Apr. 22, 2015).  See
    also Reply in Support of Motion to Dismiss

25      [5]Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Opposition"), Docket
26  No. 21 (June 9, 2015).

27      [6]FAC, ¶ 12.

28      [7]*Id.*, ¶ 13.

property.[8]  Sometime thereafter, Hernandez alleges that the note was "securitized and split from the [d]eed of [t]rust," and that the deed of trust was not properly transferred into the investment trust under the terms of its pooling and service agreement ("PSA").[9]  On this basis, she contends that defendants lack any beneficial interest in the deed of trust and cannot foreclose on her home.[10]

Beginning in 2012, Hernandez purportedly submitted a number of loan modification applications.[11]  She contends that on August 23, 2013, Michael Wickman, an SPS representative, called to inform her that she did not qualify for any in-house modification program given her income level.[12]  Hernandez allegedly received approval from her daughter to increase her income by $2,500 in October 2013, which Wickman had indicated was sufficient to qualify her for a loan modification, and began to compile documentation to submit with an updated loan modification application.[13]

On January 17, 2014, a notice of default was recorded.[14]  Less than a month later, on February 10, 2014, Hernandez allegedly submitted a complete first lien loan modification application to SPS.[15]  On April 14, 2014, she purportedly received a letter postmarked April 3, 2014, which requested additional documents in connection with the modification application.[16]  Hernandez purportedly requested an extension to submit the requested documentation, which SPS allegedly granted, and the requested documentation was timely submitted.[17]

---

[8]*Id.*, ¶ 14; RJN, Exh. A (Deed of Trust).

[9]FAC, ¶ 43.

[10]*Id.*, ¶¶ 45-46.

[11]*Id.*, ¶ 16.

[12]*Id.*, ¶ 18.

[13]*Id.*, ¶ 19.

[14]*Id.* ¶ 20.

[15]*Id.* ¶ 21.

[16]*Id.*, ¶ 22.

[17]*Id.*

Hernandez contends that on April 18, 2014 SPS recorded a notice of trustee sale while her loan modification application was under review, and before any decision respecting it had been made.[18]  On May 6, 2014, SPS allegedly acknowledged receipt of the supplemental documents Hernandez had submitted.[19]  On May 30, 2014, it purportedly sent Hernandez a letter stating that it was "not in the investor's financial interest to modify the loan."[20]  An SPS representative allegedly told Hernandez that her income was still not sufficient to justify modification of the loan.[21]  Hernandez asserts that this information conflicted with what she had been told by Wickman.[22]

On July 24, 2014, SPS allegedly sent Hernandez a letter stating that there were no modification options available; the letter also purportedly advised that SPS had determined Hernandez's income was $0.00.[23]  Hernandez alleges that the analysis SPS performed in May had found that she had income of $3,802.00; the two analyses were thus in conflict.[24]

Hernandez contends that SPS reopened her file on approximately July 24, 2014, and requested additional documents no fewer than ten times.[25]  On December 23, 2014, and again on January 9, 2015, an SPS representative told Hernandez her application was complete.[26]  On January 15 and 21, 2015, she was told that her modification application had been denied because she lacked sufficient income to qualify for a loan modification.[27]

---

[18] *Id.* ¶ 23.

[19] *Id.* ¶ 24.

[20] *Id.*, ¶ 25.

[21] *Id.*

[22] *Id.*

[23] *Id.*, ¶ 31.

[24] *Id.*

[25] *Id.*, ¶¶ 32-33.

[26] *Id.*, ¶ 34.

[27] *Id.*, ¶ 36.

## B. Defendants' Request for Judicial Notice

Defendants ask the court take judicial notice of five documents related to Hernandez's claims: (1) a deed of trust; (2) an assignment of deed of trust; (3) a notice of default and election to sell under deed of trust; (4) a notice of trustee's sale; and (5) a list of mortgage servicers that have foreclosed on more than 175 residential properties during the applicable reporting period.[28]   I n deciding a Rule 12(b)(6) motion, courts generally look only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . .  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Thus, in ruling on a motion to dismiss, the court can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence.  FED.R.EVID. 201.  Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Courts have held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008)

---

[28]Request for Judicial Notice ("RJN"), Docket No. 19 (Apr. 22, 2015).

1   (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954));

2   *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992) (holding that notice can be taken of facts

3   capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

4   question)").    The first amended complaint refers extensively to the deed of trust, notice of default,

5   and notice of trustee's sale.  These documents are therefore incorporated by reference in the pleading,

6   and the court need not affirmatively take judicial notice of them.  See *Branch,* 14 F.3d at 453.

7       Exhibit B to the request for judicial notice is a notice of assignment of deed of trust recorded

8   by the Ventura County Clerk on May 14, 2012.  The document is both time and date stamped, and has

9   a record number.  Other courts have taken judicial notice of such documents as public filings.  See

10   *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking

11   judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds

12   of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2

13   (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora*

14   *Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a

15   reference number for the document, showing that it was in fact recorded; this demonstrates that it

16   is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL

17   4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default,

18   notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public

19   record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL

20   3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters

21   of public record.  As such, this court may consider these foreclosure documents"); *Distor v. U.S.*

22   *Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed

23   of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were

24   matters of public record and thus proper subjects of judicial notice).  The court therefore takes

25   judicial notice of the existence of the assignment of deed of trust, but not the veracity of the facts

26   recited therein.  See *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (judicial notice

27   of public records is limited to the existence of the documents, not the truth of the matters stated in

28

1  them).[29]

2       Defendants also seek judicial notice of a document listing mortgage servicers that foreclosed

3  on more than 175 residential properties in 2012.  Because defendants seek improperly to rely on the

4  document for its truth, i.e., that SPS foreclosed on more than 175 residential properties in 2012, the court

5  declines to take judicial notice of it.  See *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. CV 14-01921

6  SI, 2014 WL 3897076, *5 (N.D. Cal. Aug. 7, 2014) ("It is improper for a court to take judicial notice

7  of an exhibit for the truth of the matters asserted therein"); *Troy Grp., Inc. v. Tilson*, 364 F.Supp.2d

8  1149, 1152 (C.D. Cal. 2005) (judicial notice cannot be used "to prove the truth of documents' contents,"

9  citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)).

10

11                                **II.  DISCUSSION**

12  **A.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)**

13       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

14  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory,"

15  or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica*

16  *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations

17  pleaded in the complaint as true, and construe them and draw all reasonable inferences from them

18  in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

19  1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

20       The court need not, however, accept as true unreasonable inferences or conclusory legal

21  allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544,

22  555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

23  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

24  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

25

26       [29]Hernandez objects to judicial notice of these documents, asserting that they contain hearsay and
   cannot be considered.  She does not contend the documents are not authentic.  The court therefore
27  overrules her objection and takes judicial notice of the document; as noted, however, judicial notice
   extends only to existence of the documents, not the truth of their contents.  See *Lee*, 250 F.3d at 690.

28

                                          7

1    cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter,

2    accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial

3    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4    inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

5    678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right

6    to relief above the speculative level, on the assumption that all the allegations in the complaint are

7    true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d

8    962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory

9    'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

10   claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

11       **B.      Hernandez's Challenge to the Securitization of Her Loan**

12       As an initial matter, the court considers whether Hernandez's allegations concerning the

13   purportedly improper securitization of her loan can support the claims she alleges in the complaint. As

14   is apparent from her factual allegations, Hernandez contends defendants lacked authority to foreclose

15   on the property because her loan was improperly securitized; specifically, she contends that defendants

16   failed to comply with the terms of the trust's pooling and servicing agreement ("PSA"). To the extent

17   her complaint is based on purported irregularities in the securitization process, it is deficient and must

18   be dismissed. Courts have routinely found that borrowers lack standing to assert claims based on defects

19   in the securitization process. See *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 515

20   (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of

21   the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements,

22   including the investment trust's pooling and servicing agreement, relating to such transactions."); see

23   also *Shkolnikov v. JPMorgan Chase Bank*, No. 12–03996 JCS, 2012 WL 6553988, *13 (N.D. Cal. Dec.

24   14, 2012) (dismissing a claim that defendants assigned plaintiff's loan to a trust after the closing date

25   specified in a pooling agreement because "[t]he majority position is that plaintiffs lack standing to

26   challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party

27   beneficiaries of the PSA"); *Almutarreb v. Bank of New York Trust Co., N.A.*, No. C–12–3061 EMC,

28   2012 WL 4371410, *2 (N.D. Cal. Sept. 24, 2012) (disagreeing with *Vogan* and *Johnson*, cited

8

below, and finding that, because plaintiffs were neither parties to, nor third party beneficiaries of, the PSA, they lacked standing to challenge the transfer of a loan under the PSA); *Sami v. Wells Fargo Bank*, No. C 12–00108 DMR, 2012 WL 967051, *5-6 (N.D. Cal. Mar. 21, 2012) (rejecting a claim "that Wells Fargo failed to transfer or assign the note or Deed of Trust to the Securitized Trust by the 'closing date,' and that therefore, 'under the PSA, any alleged assignment beyond the specified closing date' is void" because plaintiff lacked standing); *Junger v. Bank of America, N.A.*, No. CV 11–10419 CAS, 2012 WL 603262, *1, 3 (C.D. Cal. Feb. 24, 2012) (dismissing plaintiff's claim that "defendants failed to adhere to the January 31, 2006 deadline for transferring the note as required by the pool servicing agreement," because plaintiff lacked standing to assert such a claim); *Bascos v. Federal Home Loan Mortg. Corp.*, No. CV 11–3968 JFW, 2011 WL 3157063, *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust"); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 737 (E.D. Mich. 2010) (holding that a plaintiff who was not a party to assignments of a loan "lacks standing to challenge their validity or the parties' compliance with those contracts"). But see *Johnson v. HSBC Bank USA, N.A.*, No. 3:11–cv–2091-JM–WVG, 2012 WL 928433, *2 (S.D. Cal. Mar. 19, 2012) (denying a motion to dismiss various state law claims based on allegations that a note was not properly assigned in part because "[p]laintiff has alleged that the assignment was made after the closing date of the trust, as required by Section 2.1 of the PSA"); *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11–CV–02098-JAM–KJN, 2011 WL 5826016, *7 (E.D. Cal. Nov. 17, 2011) (denying a motion to dismiss an unfair competition claim under § 17200 where "[p]laintiffs alleged that the recorded assignment was executed well after the closing date of the MBS to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated").

The court finds the majority approach persuasive. Even if procedurally defective, any transaction through which the original lender or its assignee securitized its interest in the note and deed of trust that occurred subsequent to the date Countrywide loaned money to Hernandez does not

1   impact Hernandez.  See *Sami*, 2012 WL 967051 at *5 ("[S]ecuritization merely creates a separate

2   contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the

3   relationship of the parties in any way"); *Vieira v. Prospect Mortg., LLC*, No. SACV 11–1780 AG,

4   2012 WL 3356947, *4 (C.D. Cal. July 9, 2012) ("Nor does improper securitization excuse a

5   borrower from loan repayment obligations").

6           Even if Hernandez is correct that the loan was not properly securitized, "that does not mean

7   that the owner of the note and deed of trust could not . . . foreclose"; rather, it "simply mean[s] that

8   the loan was not put into the trust (i.e., the investment vehicle)."  *Frazier v. Aegis Wholesale Corp.*,

9   No. C–11–4850 EMC, 2011 WL 6303391, *5 (N.D. Cal. Dec. 16, 2011).  Such an infirmity would

10  not affect SPS's "authority [as] set forth in the deed and assignment documents to initiate

11  foreclosure."  *Id*.  Because Hernandez has not alleged that she was a party to or third party

12  beneficiary of the PSA, she does not have standing to allege claims based on improper securitization

13  of the loan.  Her assertion that the assignment of the note and deed of trust was legally ineffective

14  is therefore unavailing.

15          Hernandez disputes this conclusion.  She cites *Glaski v. Bank of America, N.A.*, 218 Cal.App.

16  4th 1079 (2013), in which the California Court of Appeal held that a borrower, whose loan had been

17  transferred to a trust formed under New York law, had standing to challenge the assignment of his note

18  because defendants failed to effect the assignment before the trust's closing date, creating a defect in the

19  chain of transfer.  *Id*. at 1096.  "*Glaski* has been heavily criticized both by courts in this district and by

20  other California Courts of Appeal[ ]."  See *Jara v. Aurora Loan Servs., LLC*, No. CV 11-00419 LB,

21  2014 WL 6983319, *2 (N.D. Cal. Dec. 9, 2014).  As Judge Lucy Koh explained in *Moran v. GMAC

22  Mortg., LLC*, No. 13–CV–04981–LHK, 2014 WL 3853833, *5 (N.D. Cal. Aug. 5, 2014):

23          "*Glaski* conflicts with several other California Court[ ] of Appeal cases that have held

24          that a mortgage borrower, as a third party, does not have a cause of action due to

25          irregularities in the chain of transfer.  See, e.g., *Jenkins*, 216 Cal.App. 4th at 515 ('As an

26          unrelated third party to the alleged securitization, and any other subsequent transfers of

27          the beneficial interest under the promissory note, [Plaintiff] lacks standing to enforce any

28          agreements, including the investment trust's pooling and servicing agreement, relating

to such transactions'); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272-73 (2011) (stating Plaintiff had no cause of action for merely alleging irregularities in the assignment process).   The viewpoint expressed in *Glaski* is in the minority, and numerous other California appellate courts have declined to follow it, even where the trust at issue was organized under New York law.  See *Yvanova v. New Century Mortg. Co.*, No. B247188, 2014 WL 2149797, *5 (Cal. Ct. App. Apr. 25, 2014) (declining to follow *Glaski* ); *Sporn v. JP Morgan Chase Bank N.A.*, No. G047501, 2014 WL 280627, *5 (Cal. Ct. App. Jan. 27, 2014) (categorizing the holding in *Glaski* as a minority view and declining to follow it).  'Moreover, courts in this [d]istrict have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process.'"  *Id*.

The Ninth Circuit has also declined to follow *Glaski.*  See *In re Davies*, 565 Fed. Appx. 630, 633 (9th Cir. Mar. 24, 2014) (Unpub. Disp.) ("We recognize that California courts have divided over this issue.  But the weight of authority holds that debtors in Davies' shoes – who are not parties to the pooling and servicing agreements – cannot challenge them.   We believe the California Supreme Court, if confronted with this issue, would so hold").  As noted, the court agrees with the vast majority of federal and state courts, and concludes that a borrower such as Hernandez who is not a party to the PSA lacks standing to challenge irregularities in the securitization of her note.   To the extent Hernandez's claims are based on a contention that defendants lacked authority to initiate foreclosure proceedings because of the purportedly defective securitization of the note, therefore, they must be dismissed.

**C.      Whether Hernandez's Civil Code § 2924(a)(6) Claim Must Be Dismissed**

Defendants contend that Hernandez's Civil Code § 2924(a)(6) claim must be dismissed for a variety of reasons.  Section 2924(a)(6) provides:

"No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.  No agent of the

11

holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." CAL. CIV. CODE § 2924(a)(6).

### 1. Securitization

Defendants contend Hernandez's § 2924(a)(6) claim must be dismissed because it is based entirely on a contention that SPS lacked authority to initiate foreclosure proceedings due to improper securitization of the loan. Section 2924 does not require that the party initiating foreclosure proceedings have a beneficial or economic interest in the note in order to foreclose. See *In re Cedano*, 470 B.R. 522, 530 (9th Cir. BAP 2012) ("Under Cal. Civ. Code § 2924, the party initiating foreclosure proceedings is not required to have a beneficial or economic interest in the note in order to foreclose"); *McLaughlin v. Wells Fargo Bank, N.A.*, No. SA CV 12-1114-DOC, 2012 WL 5994924, *6 (C.D. Cal. Nov. 30, 2012) ("There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure proceedings. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale," quoting *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010)); see also *Caovilla v. Wells Fargo Bank, N.A.*, No. 13 CV 1003 JSC, 2013 WL 2153855, *4 (N.D. Cal. May 16, 2013) (same). As the statute makes clear, a "trustee, mortgagee, or beneficiary, or any of their authorized agents" can commence non-judicial foreclosure proceedings. See CAL. CIV. CODE § 2924(a)(1).

Because the only basis on which Hernandez contests defendants' authority to foreclose is the fact that the note and deed of trust were improperly securitized, and because the court has concluded that that theory is not viable, this claim is also deficient and must be dismissed.

### 2. Damages

Although Hernandez's § 2924(a)(6) claim fails because it is based on improper securitization, it fails for another reason as well – failure adequately to allege damages. Hernandez seeks money damages on this claim. At least one California district court has questioned whether "there [i]s any relief

available for violations of § 2924." *Penermon v. Wells Fargo Bank, N.A.*, 47 F.Supp.3d 982, 996 (N.D. Cal. 2014). In *Penermon*, the court ordered the parties to brief whether § 2924 authorized an award of money damages. After finding plaintiff's authority inapposite, the court dismissed the claim with leave to identify applicable statutory authority authorizing the recovery of money damages. It noted it did "not believe that it [wa]s authorized to provide money damages for a violation of § 2924 as it was excluded from 2924.12, which explicitly provides for statutory damages for various violations of HBOR and, therefore, the non-judicial foreclosure scheme." *Id*. at 997.

The court finds *Penermon* persuasive. Section 2924.12 sets forth a statutory scheme for redressing violations of the HBOR; despite the fact that it references various other HBOR statutes, § 2924.12 does not mention § 2924(a). See, e.g., CAL. CIV. CODE § 2924.12 ("After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17"). See also Harry D. Miller and Marvin B. Starr, MILLER AND STARR CALIFORNIA REAL ESTATE 3D, § 10:185 n. 25 (3d ed. 2014) ("The statutory damages remedy is applicable only for violation of Civ. Code, §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.17, and 2924.18"). Because the California legislature clearly provided money damages as a remedy for certain HBOR violations, but not for others, the court is constrained to conclude that it did not intend to permit the recovery of money damages for a § 2924(a)(6) violation. For that reason, and absent citation to authority suggesting otherwise, Hernandez's claim for money damages resulting from defendants' alleged violation of § 2924(a)(6) does not appear to be cognizable. Because defendants do not seek dismissal on this ground, however, the court declines to dismiss the cause of action on this basis at this time; Hernandez is directed, however, to note the court's discussion of this issue, and cite appropriate authority authorizing the recovery of money damages if she elects to replead this claim.

### D.   Whether Hernandez's Civil Code § 2923.6 Claim Must Be Dismissed

Civil Code § 2923.6 prohibits a lender from "dual tracking" – i.e., "initiating foreclosure proceedings when there is a pending 'complete application for a first lien loan modification.'" *Stokes v. CitiMortgage, Inc*., No. CV 14-00278 BRO (SHx), 2014 WL 4359193, *5 (C.D. Cal. Sept. 3, 2014).

An application is deemed to be pending until any of the following occurs:

"(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification[;] (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer[; or] (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." CAL. CIV. CODE § 2923.6(c).

The court agrees with defendants that this claim is deficiently pled because Hernandez does not allege that a notice of default was filed while a complete first lien loan modification application was pending. Hernandez alleges that the notice of default was filed on January 17, 2014; she asserts that her complete first lien loan modification application was not submitted to SPS until February 10, 2014, however.[30] Thus, the notice of default was recorded nearly a month before her completed application was filed. Because "[t]he requirements and prohibitions of § 2923.6(c) are triggered by the borrower's submission of a 'complete' loan modification application," defendants had no § 2923.6(c) obligation on January 17, 2014 when the notice of default was recorded. See *Garcia v. PNC Mortgage*, No. CV 14-3543 PJH, 2015 WL 534395, *7 (N.D. Cal. Feb. 9, 2015). The claim is therefore inadequately pled and must be dismissed.

There are additional reasons the claim fails, however. Even had Hernandez alleged that a notice of default was filed *after* she submitted a loan modification application and while it was pending, she does not plausibly allege that the application was "complete" in the sense § 2923.6(c) requires. Hernandez pleads, in conclusory fashion, that she submitted "a <u>complete</u> first lien loan modification application" on February 10, 2014.[31] "A bald allegation that a party submitted 'complete' loan modification applications – without sufficient supporting factual allegations – is a conclusory statement, and the [c]ourt does not rely on such assertions in evaluating the sufficiency of [a p]laintiff's complaint." See *Stokes*, 2014 WL 4359193 at *7 (citing *Iqbal*, 556 U.S. at 679); see also *Garcia*, 2015 WL 534395 at *7 ("Here, while plaintiff alleges in a conclusory fashion that his first, second, third, and fourth loan

---

[30]FAC, ¶¶ 20-21.

[31]*Id.*, ¶ 21.

14

1   modification applications were all 'complete,' he alleges no facts from which it can be determined

2   whether, as to each application, plaintiff supplied PNC with all documents required by PNC within the

3   reasonable timeframes specified"); see CAL. CIV. CODE § 2923.6(h) ("For purposes of this section, an

4   application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all

5   documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage

6   servicer").

7        Hernandez's allegation that she submitted a complete loan modification application is not only

8   conclusory, but is contradicted by other allegations in the complaint.  Although she alleges the

9   application was "complete" on February 10, 2014, she asserts that SPS requested additional information

10   from her on April 14, 2014, and that she requested additional time to comply with the request.[32]  The

11   application could not have been complete if more information was required.  Contradictory allegations

12   such as these are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*.  See

13   *Rieber v. OneWest Bank FSB*, No. 13-CV-2523 W JLB, 2014 WL 1796706, *3 (S.D. Cal. May 6, 2014)

14   ("Plaintiffs' Complaint pleads contradictory facts that fail to provide fair notice to Defendants regarding

15   the basis of the FDCPA claim[, and] . . . keeps Plaintiffs' FDCPA claim from meeting Rule 8's

16   requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief'

17   rising above a speculative level");  *Zamanyan v. Northland Group, Inc*., No. CV 12–01212, 2012 WL

18   2756644, *1 (C.D. Cal. July 9, 2012) ("Zamanyan's Complaint fails against all defendants because the

19   contradictory nature of his factual allegations forecloses recovery"); see also *Moenig v. Bank of Am.,*

20   *N.A.*, No. 14-CV-01399 KJM, 2015 WL 2185245, *4 (E.D. Cal. May 8, 2015) ("These contradictory

21   factual allegations do not meet Rule 8's requirement of a 'short and plain statement'").

22        For all of these reasons, the claim is inadequately pled and must be dismissed.

23       **E.**    **Whether Hernandez's Quiet Title Claim Must Be Dismissed**

24        To allege a claim for quiet title, the complaint must include a description of "[t]he title of the

25   plaintiff as to which a determination . . . is sought and the basis of the title," and "[t]he adverse claims

26   to the title of the plaintiff against which a determination is sought."  CAL. CODE CIV. PROC. § 761.020.

27

28      [32]*Id*., ¶¶ 21-22.

1    "A plaintiff is also required to name the 'specific adverse claims' that form the basis of the property

2    dispute." *Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1168 (S.D. Cal. 2009) (quoting

3    CAL. CODE CIV. PROC.§ 761.020, cmt. at ¶ 3).

4          Defendants seek dismissal of Hernandez's quiet title claim because she fails to allege a valid

5    tender of the outstanding loan balance.  "[U]nder California law, '[a] valid and viable tender of

6    payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed

7    of trust.'" *Agbabiaka v. HSBC Bank USA Nat. Association*, No. 09-05583 JSW, 2010 WL 1609974,

8    *6 (N.D. Cal. Apr. 20, 2010) (quoting *Karlsen v. American Savings and Loan Assoc.*, 15 Cal.App.3d

9    112, 117-18 (1971)); see also *Lester v. J.P. Morgan Chase Bank*, 926 F.Supp.2d 1081, 1092 (N.D.

10    Cal. 2013) ("Generally, the 'tender rule' applies to claims to set aside a trustee's sale for procedural

11    irregularities or alleged deficiencies in the sale notice").  "The tender rule requires a plaintiff to (1)

12    'demonstrate a willingness to pay' and (2) 'show the ability to pay.'" *Farah v. Wells Fargo Home*

13    *Mortgage*, No. 5:13–cv–01127–PSG, 2014 WL 261562, *2 (C.D. Cal. Jan. 23, 2014) (quoting *In*

14    *re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)).  "The rationale behind the rule[ ] is that if [the

15    borrower] could not have redeemed the property had the sale procedures been proper, any

16    irregularities in the sale did not result in damages to the [borrower]." *Id.* (quoting *Lona v. Citibank,*

17    *N.A.*, 202 Cal.App.4th 89, 112 (2011) (second and third alterations original)).

18          The tender rule requires that a plaintiff allege tender as an element of any cause of action that

19    is "implicitly integrated" with a foreclosure sale.  *Arnolds Management Corp. v. Eischen*, 158

20    Cal.App.3d 575, 579 (1984) ("A cause of action 'implicitly integrated' with the irregular sale fails

21    unless the trustor can allege and establish a valid tender"); see also *Adesokan v. U.S. Bank, N.A.*, No.

22    1:11–cv–01236–LJO–SKO, 2012 WL 395969, *6 (E.D. Cal. Feb. 7, 2012) ("[T]o the extent that

23    Plaintiff's fraud claims are predicated on irregularities or deficiencies in the foreclosure sale

24    procedures, the claims are subject to the tender rule.  A failure to tender the amount of indebtedness

25    bars any claims 'implicitly integrated' with foreclosure," citing *Arnolds Management Corp.*, 158

26    Cal.App.3d at 579)); *Montoya v. Countrywide Bank*, No. C09-00641 JW, 2009 WL 1813973, *11-12

27    (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition

28    to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the

borrower must make a valid and viable tender of payment of the debt").  Thus, it prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Williams v. Countrywide Home Loans*, No. C 99–0242 SC, 1999 WL 740375, *2 (N.D. Cal. Sept. 15, 1999).  See also *FPCI RE-HAB 01 v. E&G Investments, Ltd.*, 207 Cal.App.3d 1018, 1022 (1989) (stating that the rationale behind the rule is that if the plaintiff could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiff).

Allegations concerning tender must go beyond mere conclusory assertions that plaintiff has offered to tender the amount of his or her indebtedness.  *Flores v. EMC Mortgage Co.*, 997 F.Supp.2d 1088, 1107 (E.D. Cal. 2014) (holding that plaintiff's allegation that '[he] is ready, willing, and able to unconditionally tender his obligation to the true holder in due course of Note and Deed of Trust' was conclusory and insufficient to plead tender); *Garcia v. Seterus, Inc.*, No. CV F 12–2049 LJO SAB, 2013 WL 1281565, *8 (E.D. Cal. Mar. 27, 2013) ("Neither the complaint nor record references Ms. Garcia's credible tender of indebtedness or meaningful ability to do so.  The complaint makes the conclusory allegation that Ms. Garcia has offered to and is ready to tender her obligation.  The absence of facts to support the tender allegation render it a mere conclusion lacking credibility, especially considering Ms. Garcia's bankruptcy and default"); *Chavers v. GMAC Mortgage*, No. 2:11–cv–01097–ODW (SSx), 2012 WL 2343202, *10 (C.D. Cal. June 20, 2012) (a conclusory allegation of tender does not suffice to plead a "credible" tender for purposes of a quiet title claim).

In determining whether plaintiff has adequately alleged an ability to pay the outstanding amount, courts often consider whether plaintiff has previously defaulted.  *Madlaing v. JPMorgan Chase Bank, N.A.*, No. CV F 12–2069 LJO SMS, 2013 WL 2403379, *7 (E.D. Cal. May 31, 2013) ("The record's silence on [plaintiff's] tender of or ability to tender amounts outstanding is construed as his concession of inability to do so, especially considering his more than two years of remaining in default"); *Bever v. Cal. W. Reconveyance Corp.*, No. 1:11–CV–1584 AWI SKO, 2013 WL 5492154, *4 (E.D. Cal. Oct. 2, 2013) (Assuming that Bever's tender offer is sufficiently unequivocal, the offer is not credible.  First, Bever is in default. . ."); *Anaya v. Advisors Lending*

*Group*, No. CV F 09–1191 LJO DLB, 2009 WL 2424037, *10 (E.D. Cal. Aug. 5, 2009) ("Plaintiff does not deny that she is in default on her home loan.  Plaintiff offers nothing to indicate that she is able to tender her debt").

Hernandez does not offer make a conclusory allegation that she tendered or has the present ability to tender the amount due on her mortgage.  The tender rule, however, is not absolute; several exceptions apply.  First, "a tender may not be required where it would be inequitable to do so." *Onofrio v. Rice*, 55 Cal.App.4th 413, 424 (1997).  Second, a number of courts have held that the rule applies only where plaintiff seeks to set aside a completed sale, rather than to enjoin a pending sale. *Lester*, 926 F.Supp.2d at 1093 (collecting cases); see also *Barrionuevo v. Chase Bank, N.A.*, 885 F.Supp.2d 964, 973–74 (N.D. Cal. 2012) (collecting cases); *Chan Tang v. Bank of America, N.A.*, No. SACV 11–2048 DOC (DTBx), 2012 WL 960373, *4-7 (C.D. Cal. Mar. 19, 2012) (discussing a split of authority as to whether the tender rule applies to pending foreclosure sales, and declining to apply the rule pre-sale because "[t]he situation presented by a pending foreclosure is entirely different from one where the sale has already occurred.  When the sale has occurred, unwinding it requires expending significant judicial resources because a bona fide purchaser has taken title; this process often involves third parties not present in a pending sale situation.  When the sale is still pending, postponing it imposes only a modicum of delay, ensures that all of the legally required paperwork is in order, and still allows lenders to recover subject properties once they have shown that all of their documentation is proper").

Third, a number of federal courts have declined to apply the tender rule when plaintiff alleges that defendant lacked authority to foreclose on the property, and thus that any foreclosure sale was void rather than voidable. *Subramani v. Wells Fargo Bank N.A.*, No. C 13–1605 SC, 2013 WL 5913789, *4 (N.D. Cal. Oct. 31, 2013) (noting that courts have found an exception to the tender rule if "a sale is void, rather than simply voidable," as when an incorrect trustee forecloses on a property); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1147 (N.D. Cal. 2013) ("Several courts have refused to apply the tender requirement where plaintiff alleges that the defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be void rather than merely voidable"); *Lester*, 926 F.Supp.2d at 1093 ("[W]here a plaintiff alleges that

the entity lacked authority to foreclose on the property, the foreclosure sale would be void.  And where a sale is void, rather than simply voidable, tender is not required" (citation and internal quotation marks omitted)); *Barrionuevo*, 885 F.Supp.2d at 970–71 ("[W]here a sale is 'void,' rather than simply voidable, tender is not required.  A sale that is deemed void means, in its strictest sense that it has no force and effect, whereas one that is deemed 'voidable' can be 'avoided' or set aside as a matter of equity.  In a voidable sale, tender is required based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose.  That reasoning does not extend to a sale that is void *ab initio*, since the contract underlying such a transaction is a nullity with no force or effect as opposed to one which may be set aside in reliance on equity" (citations, quotation marks, and brackets omitted)).[33]

Although Hernandez pleads that defendants lacked authority to foreclose due to the improper securitization of her loan, the court has concluded that these allegations lack merit.  They are thus not sufficient to invoke an exception to the tender rule.  Hernandez, however, challenges a pending foreclosure sale, not a completed one.  For that reason, the court follows those cases that have held the tender rule does not apply to claims seeking to enjoin a pending sale.  *Lester*, 926 F.Supp.2d at 1093 (collecting cases); see also *Barrionuevo*, 885 F.Supp.2d at 973–74 (N.D. Cal. 2012) (collecting cases); *Chan Tang*, 2012 WL 960373 at *4-7.  The court therefore declines to dismiss Hernandez's quiet title claim for failure to allege tender.

The claim is nonetheless deficient and must be dismissed because it is based entirely on allegations of improper securitization of the loan.  See *Lomely v. JP Morgan Chase Bank, Nat. Ass'n*, No. 5:12 CV 01194 EJD, 2012 WL 4123403, *4 (N.D. Cal. Sept. 17, 2012) ("Because Lomely's claims for wrongful foreclosure, quiet title, and his arguments in support of his request for declaratory and injunctive relief are based on the erroneous notion that Chase had no interest in the

---

[33]See also *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12–cv–03646 JSC, 2013 WL 2299601, *16–17 (N.D. Cal. May 24, 2013); *Albano v. Cal–W. Reconveyance Corp.*, No. 4:12–cv–4018 KAW, 2012 WL 5389922, *7-8 (N.D. Cal. Nov. 5, 2012); *Tamburri v. Suntrust Mortg., Inc.*, No. C–11–2899 EMC, 2011 WL 6294472, *4 (N.D. Cal. Dec. 15, 2011).

1   Loan or right to initiate foreclosure proceedings, each of these causes of action are dismissed");

2   *Rosas v. Carnegie Mortgage, LLC*, No. CV 11-7692 CAS (CWx), 2012 WL 1865480, *8 (C.D. Cal.

3   May 21, 2012) (dismissing a quiet title claim, *inter alia*, because "plaintiffs' theory that lenders that

4   received funds through loan securitizations or credit default swaps must waive their borrowers'

5   obligations fails as a matter of law"); see also *Mann v. Bank of America, N.A.*, No.

6   5:13–cv–02293–CAS (DTBx), 2014 WL 495617, *6 (C.D. Cal. Feb. 3, 2014) (dismissing quiet title

7   and slander of title claims based on allegations of securitization and robo signing).

8        Hernandez's quiet title claim is therefore deficiently pled and must be dismissed.

9       **F.**    **Whether Hernandez's Declaratory Relief Claim Must Be Dismissed**

10        Defendants next assert that Hernandez's declaratory relief claim must be dismissed.  Federal

11   courts sitting in diversity apply the substantive law of the forum state.  See *Clark v. Allstate Insurance*

12   *Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000) ("It is well-established that federal courts sitting in

13   diversity must apply state substantive law and federal procedural rules," citing *Computer Economics,*

14   *Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. 1999), and *Erie R.R. v. Tompkins*, 304

15   U.S. 64, 78 (1938)).  As a consequence, federal courts have consistently applied California Code of Civil

16   Procedure § 1060 to assess the validity of a declaratory relief claim rather than the federal Declaratory

17   Judgment Act when sitting in diversity.  See, e.g., *Acceptance Insurance Co. v. American Safety Risk*

18   *Retention Group, Inc.*, No. 08cv1057-L(WMc), 2010 WL 744291, *4 (S.D. Cal. Mar. 3, 2010) (applying

19   § 1060 to a declaratory relief claim); *LeFebvre v. Syngenta Biotechnology, Inc* ., No. C 08-02732 JW,

20   2008 WL 5245056, *3 (N.D. Cal. Dec. 15, 2008) (same); *Smith v. Bioworks, Inc.*, No. CIV. S-05-1650

21   FCD EFB, 2007 WL 273948, *4 n. 5 (E.D. Cal. Jan. 29, 2007) ("Plaintiff generally alleges a claim for

22   declaratory relief in his Complaint.  Because this is a diversity action, and because plaintiff alleges that

23   California law applies in this action, the court applies California's declaratory relief statute to plaintiff's

24   claims").[34]

25

26       [34]A number of courts outside this circuit have concluded that the federal Declaratory Judgment

27   Act ("DJA") is procedural rather than substantive, and therefore that a court sitting in diversity must
apply the federal standard.  See *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332-33 (11th Cir.

28   1989) (holding that Declaratory Judgment Act is procedural not substantive law), abrogated on other

Section 1060 provides that:

"[a]ny person interested under a written instruction . . . or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties[.]" CAL. CODE CIV. PROC. § 1060.

Because Hernandez has failed to state any substantive claims, her declaratory relief claim fails. See *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10–cv–08185–ODW (FFMx), 2012 WL 6140962, *8 (C.D. Cal. Dec. 11, 2012) ("Declaratory and injunctive relief do not lie where all other claims have been dismissed. Javaheri is therefore not entitled to declaratory or injunctive relief without a viable underlying claim"); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F.Supp.2d 873, 888 (N.D. Cal. Nov. 7, 2011) ("Shaterian's tenth claim seeks a declaration concerning the rights and duties of the parties with respect to his first nine claims. This claim is ultimately a request for relief, and Shaterian is not entitled to such relief absent a viable underlying claim. Accordingly, the court DISMISSES Shaterian's claim for declaratory relief to the extent it seeks a declaration concerning Shaterian's dismissed claims, i.e.,

---

grounds by *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases"); *118 East 60th Owners. Inc. v.. Bonner Properties, Inc*., 677 F.2d 200, 203 (2d Cir. 1982) ("Normally, the availability of state declaratory relief would be irrelevant to whether federal court may grant such a remedy"); *Farmers Alliance Mutual Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1975) ("It is well recognized that the [Declaratory Judgment] Act involves procedural remedies and not substantive rights"). But see *Allstate Ins. Co. v. Charneski*, 286 F.2d 238, 243-44 (7th Cir. 1960) (because under Wisconsin law, a declaratory judgment of insurance non-coverage was not available, that was the substantive policy of the state and had to be applied by a federal court sitting in diversity). The court need not determine whether state or federal law applies because the standard for pleading a declaratory relief claim under federal and California law is substantially similar. Under the DJA, a party is only entitled to a declaratory judgment if "'a substantial controversy [exists] between . . . parties having adverse legal interests, [and that controversy is] of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").

claims two, four, five, eight, and nine"); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1038 (N.D. Cal. 2010) ("Plaintiff has failed to state any claims, so there is no actual and present controversy"). Accordingly, the court dismisses the claim.

### G. Whether Hernandez's Civil Code § 2923.5 Claim Must Be Dismissed

Civil Code § 2923.5(a) provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until . . . [e]ither [1] 30 days after initial contact [with the borrower to assess the borrower's financial situation] is made . . . or [2] 30 days after satisfying the due diligence requirements [regarding contact with the borrower] as described in subdivision (e)." CAL. CIV. CODE § 2923.5(a).[35]

"Section 2923.5 requires only contacts or attempted contacts to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'" *Vega v. JPMorgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1113 (E.D. Cal. 2009). Hernandez alleges that she was not contacted by defendants prior to the filing of the notice of default.[36] She "fails to acknowledge[, however,] that section 2923.5 actually provides two ways for lenders to comply. They can *either* contact the borrower in person or by phone; or they can satisfy due diligence requirements in attempting to make such contact. In other words, as long as lenders make actual attempts to contact a borrower (in accordance with the statute's due diligence requirements), they have complied with section 2923.5, even if actual contact

---

[35]SPS contends it is exempt from the requirements of § 2923.5. "Subdivisions (c) to (h) [of § 2923.5] do not apply to entities described in subdivision (b) of § 2924.18." See *Rockridge Trust*, 985 F.Supp.2d at 1151 (citing CAL. CIV. CODE § 2923(i)). Section 2924.18(b) states that it applies "only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 . . . or Division 20 . . . of the Financial Code, or a person licensed pursuant to Part 1 . . . or Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California." CAL. CIV. CODE § 2923.18(b). Whether SPS has foreclosed on fewer than 175 residential real properties in 2012, the relevant time period for purposes of Hernandez's claim, is a question of fact.

SPS cites Exhibit E to defendants' request for judicial notice, which is a page from the California Department of Business Oversight website listing mortgage services that effectuated more than 175 foreclosures in 2012. (See Motion at 16 (citing RJN, Exh. E).) The court earlier declined to take judicial notice of this webpage because SPS relied on it for the truth of the matters reflected there. The court therefore declines to dismiss Hernandez'd § 2923.5 claim on this basis.

[36]FAC, ¶ 113.

1  with the borrower is never made." *Miller v. Bank of New York*, No. CV 12-2942 PJH, 2013 WL 663928,

2  *3 (N.D. Cal. Feb. 22, 2013); *Ghuman v. Wells Fargo Bank, N.A.*, 989 F.Supp.2d 994, 1004-05 (E.D.

3  Cal. 2013) ("Section 2923.5 does not require that Defendant must successfully contact Plaintiffs.  It

4  merely requires that Defendant attempt such contact with 'due diligence.'  The plain language of Section

5  2923.5 states specifically that a 'notice of default . . . shall include a declaration that the mortgager

6  servicer has contacted the borrower' or '*has tried with due diligence to contact the borrower.*'").

7      The first amended complaint "does not allege that defendants failed to make attempts to contact

8  plaintiff[;] instead, it alleges only that defendants did not actually make contact with plaintiff.  In order

9  to state a claim . . . based on the failure to comply with section 2923.5, [Hernandez] must allege that

10  defendants failed to comply with *either prong* of section 2923.5."  See *Miller*, 2013 WL 663928 at *3;

11  *Ghuman*, 989 F.Supp.2d at 1005 (dismissing § 2923.5 claim for failure to allege no attempt to contact,

12  as opposed simply to alleging no contact was made).        Furthermore, Hernandez's blanket allegation

13  that she was *never* contacted is contradicted by other, non-conclusory allegations in the complaint.

14  Specifically, she alleges that on August 23, 2014 "Michael Wickman with SPS called and said [she] did

15  not qualify for an 'in-house' modification program because she needed to have more income."[37]  While

16  this conversation purportedly took place after the notice of default was filed, rather than before, it

17  nonetheless contradicts Hernandez's allegation that she was never contacted. As noted, contradictory

18  allegations are inherently implausible.  See *Rieber*, 2014 WL 1796706 at *3 ("Plaintiffs' Complaint

19  pleads contradictory facts that fail to provide fair notice to Defendants regarding the basis of the FDCPA

20  claim[, and] . . . keeps Plaintiffs' FDCPA claim from meeting Rule 8's requirement of 'a short and plain

21  statement of the claim showing that the pleader is entitled to relief' rising above a speculative level.");

22  *Zamanyan*, 2012 WL 2756644 at *1 (same).

23      Finally, to the extent Hernandez seeks damages for violation of § 2923.5, the claim must be

24  dismissed because "relief under § 2923.5 is limited to a postponement of foreclosure, as opposed to

25  damages."  *Taguinod v. World Sav. Bank, FSB*, 755 F.Supp.2d 1064, 1073 (C.D. Cal. 2010); see

26  *Quintero v. Wells Fargo Bank, N.A.*, No. CV 13-04937 JSC, 2014 WL 202755, *6 (N.D. Cal. Jan. 17,

27

28      [37]*Id.*, ¶ 18.

2014) ("The Court notes, however, that the only relief under Section 2923.5 is a postponement of the foreclosure sale so that Wells Fargo may comply with the statute. Thus, Plaintiff's request for damages, which is made in addition to his request for a postponement of the foreclosure sale, is not available," citing *Mabry v. Superior Court,* 185 Cal.App. 4th 208, 214 (2010)).

For all of these reasons, Fernandez's § 2923.5 claim is deficient and must be dismissed.

**H.      Whether Hernandez's UCL Claim Must Be Dismissed**

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2010 WL 2898284, *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. & PROF. CODE § 17200). "'An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal.App.4th 1544, 1554 (2007)). The law is "sweeping, embracing anything that can properly be called a business practice and [that is] at the same time . . . forbidden by law." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); see also *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same). California courts have held that "an action under the UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003) (citations and internal quotation marks omitted).

Hernandez alleges that defendants violated the unfair, unlawful, and fraudulent prongs of the statute, citing the other causes of action alleged in the first amended complaint. Defendants argue, and the court agrees, that Hernandez's UCL claim fails because she has not alleged that they engaged in unlawful, unfair, or fraudulent conduct. This is because all of her substantive claims fail. Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well. See *Khan v. CitiMortgage, Inc.*, 975 F.Supp.2d 1127, 1146 (E.D. Cal. 2013) ("The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite Ms. Khan's unsubstantiated claims. . . . As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim"); *Bejou v. Bank of Am., N.A.*, No. CV F 13–0125 LJO SMS, 2013 WL 1759126, *5 (E.D. Cal. Apr. 24, 2013) ("Reliance on other invalid

1    claims fails to support a viable UCL claim").  For this reason, the court dismisses Hernandez's UCL

2    claim.

3            Defendants also maintain that Hernandez's UCL claim must be dismissed for lack of standing.

4    "A plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has:

5    (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3)

6    been denied money to which he or she has a cognizable claim."  *Marilao v. McDonald's Corp.*, 632

7    F.Supp.2d 1008, 1012 (S.D. Cal. 2009) (citing *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 854–55 (2008)).

8    "This statutory limitation requires that a plaintiff show he has suffered losses capable of restitution," as

9    restitution and an injunction are the only remedies available for violation of the UCL.  *Small v. Mortgage*

10   *Electronic Registration Systems, Inc.*, Nos. 09–cv–0458, 2:10–cv–0342, 2010 WL 3719314, *12 (E.D.

11   Cal. Sept.16, 2010) (internal citations omitted). "Ordinarily when we say someone has 'lost' money we

12   mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him

13   or subject to his control; it has passed out of his hands by some means, such as being spent or mislaid."

14   *Silvaco Data Systems v. Intel Corp.*, 184 Cal.App.4th 210, 244 (2010).

15           Hernandez alleges that she "has lost money and title to the [p]roperty . . . [and] has lost or now

16   owes money in order to avoid foreclosure."[38]  As noted, the only type of monetary relief that is available

17   on a UCL claim is restitution; "[t]o show [entitlement] to restitution, a plaintiff must demonstrate that

18   the defendant is in possession of money or property taken from [him or] her."  See *Asghari v.*

19   *Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306, 1324 (C.D. Cal. 2013); *Groupion, LLC v. Groupon,*

20   *Inc.*, 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because

21   plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money

22   from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest [in] any of [defendant's]

23   profits," citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 699 (2006) (a plaintiff

24   can seek money or property as restitution only when the "money or property identified as belonging in

25   good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's

26   possession")); *Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D. Cal. 2011) (restitution is not available where

27   _____

28           [38]FAC, ¶ 122.

                                                    25

1    the money claimed by plaintiff cannot be "traced to any particular funds in [defendants'] possession");

2    *EchoStar Satellite Corp. v. NDS Group PLC,* No. SA CV03–0950 DOC, 2008 WL 4596644, *9 (C.D.

3    Cal. Oct. 15, 2008) ("Restitution under the UCL is only available where the sum at issue can clearly be

4    traced to particular funds or property in the defendant's possession. . . .   As the Court previously

5    recognized, NDS never directly took anything from EchoStar. . . .   Simply put, it is plain that EchoStar

6    is seeking to dress up its unsuccessful damages claim as one for restitution under the UCL.  However,

7    such relief is not available" (internal quotation marks and citations omitted)); see also *Bank of the West

8    v. Superior Court,* 2 Cal.4th 1254, 1268 (1992) (when restitution is ordered, "defendant is asked to

9    return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered

10   as a result of his conduct").  The fact that Hernandez does not allege she paid any monies to defendants

11   as a result of their allegedly unlawful, unfair or fraudulent conduct means that she has not adequately

12   pled she has standing to assert a UCL claim.

13        For these reasons, the court dismisses Hernandez's UCL claim.

14   **I.       Whether Hernandez's Negligence Claim Must Be Dismissed**

15        To state a negligence claim under California law, a plaintiff must plead: "(1) defendant's

16   legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to

17   plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages."

18   *Palm v. United States,* 835 F.Supp. 512, 520 (N.D. Cal. 1993); see also *Krawitz v. Rusch,* 209

19   Cal.App.3d 957, 963 (1989) ("For a negligence cause of action, the plaintiff must allege a duty, a

20   breach of that duty, and injury to the plaintiff as a proximate result of that breach"); *Peter W. v. San

21   Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 820 (1976) ("According to the familiar California

22   formula, the allegations requisite to a cause of action for negligence are (1) facts showing a duty of

23   care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff

24   as a proximate result").

25        Defendants maintain that they did not owe Hernandez a duty of care, and that her negligence

26   claim fails as a matter of law.  Hernandez counters that defendants owed her a duty to exercise

27   reasonable care in processing her loan modification application because they agreed to consider her

28

26

for a modification.[39]  Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in [a] loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Velasquez v. Chase Home Finance LLC*, No. C 10-01641 SI, 2010 WL 3211905, *5 (N.D. Cal. Aug. 12, 2010) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991)); see also *Gonzalez v. First Franklin Loan Services*, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, *8 (E.D. Cal. Jan. 11, 2010) (same).  The principle that a financial institution owes no duty to a borrower has been extended to loan servicers as well. *Azzini v. Countrywide Home Loans*, No. 09cv787 DMS (CAB), 2009 WL 5218042, *2 (S.D. Cal. Dec. 29, 2009); *Wong v. Am. Servicing Co., Inc.*, No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, *6 (E.D. Cal. Dec. 18, 2009) ("Plaintiffs fail to allege any facts that as a lender, Meridias or Hicks actively participated in the financed enterprise beyond their capacities as lender and lending agent.  Similarly, plaintiffs cite no facts or authority to support their position that American Servicing or MERS owed them a duty of care in their respective capacities as servicer and nominee o[f] the trust.  Rather, in their complaint, plaintiffs describe nothing more than an arms-length loan transaction between defendants and themselves. . . .  As such, under the facts pled in the complaint, defendants owed plaintiffs no duty of care").

In *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872, 898 (2013), the California Court of Appeal held that the lender on a construction loan that had made "specific representations" to the borrower concerning "the likelihood of a loan modification" owed the borrower a duty of care. The court reviewed the six factor test set forth in *Biakanja v. Irving*, 49 Cal.2d 647 (1958), which is often used in determining whether a duty of care exists.  The test involves balancing various factors, including: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Jolley*, 213 Cal.App.4th at 899 (citing *Biakanja*, 49 Cal.2d at 650).

---

[39]FAC, ¶ 115.

27

The *Jolley* court concluded that "false assurances given by Chase personnel about the prospects for a loan modification" were sufficient to give rise to a duty of care under *Biakanja*. *Id.* at 900-01. It noted that the lender's assurances were indisputably intended to affect the plaintiff, and concluded it was "foreseeable that Jolley would sink more of his own money into the [property], thereby suffering further injury" once foreclosure occurred. *Id*. at 900. The court also found that actual injury was evident, and concluded that "the upbeat prediction of the availability of a loan modification and . . . rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury." *Id.* While the court could not determine "how blameworthy Chase's conduct [might] prove to be," it noted that the fact that "Chase benefitted from prolonging the loan renegotiation period and encouraging Jolley to complete construction [at the property] certainly len[t] itself to a blameworthy interpretation." *Id*. For these reasons, the court concluded that Jolley had sufficiently demonstrated that Chase's conduct went beyond that of a mere lender, and that it owed him a duty of care as a result of its representations. *Id.* at 906. See also *Yau v. Deutsche Bank Nat. Trust Co. Americas*, No. 11–57209, 2013 WL 2302438, *3 (9th Cir. May 24, 2013) (Unpub. Disp.) (observing that *Jolley* "applied the six-factor test outlined in [*Biakanja* and] determine[d] [that] a lender or loan servicer owe[d] a duty of care to a borrower").

Following *Jolley,* district courts in California split as to whether the reasoning of the decision applied to lenders in the residential home loan context. Several courts held that a lender that affirmatively promises a residential home loan modification to a borrower owes the borrower a duty of care, while others concluded that the holding was limited to the commercial loan context. Compare *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, *4-7 (N.D. Cal. Mar. 28, 2011) (holding that the defendant lender/servicer "went beyond its role as a silent lender and loan servicer" when it allegedly made an affirmative promise that it would modify plaintiffs' loan, and plaintiffs relied to their detriment on that promise, and stating that the bank "agreed to place plaintiffs on a trial modification plan, guaranteeing that if plaintiffs made payments on time in the modified amount for three months, Chase would provide a permanent modification of their loan"); *Ottolini v. Bank of America*, No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D. Cal. Aug. 19, 2011) (holding that a servicer did not owe a duty of care to a mortgagor because "the

application for loan modification had not progressed to a concrete stage," and distinguishing *Ansanelli* because there "the lender agreed to place the borrower on a loan modification plan") with *Diunugala v. JP Morgan Chase Bank*, No. 12cv2106–WQH–NLS, 2013 WL 5568737, *4 (S.D. Cal. Oct. 3, 2013) ("The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing issues"); *Ware v. Bayview Loan Servicing, LLC,* No. 13-CV-1310 JLS (NLS), 2013 WL 4446804, *5 (S.D. Cal. Aug. 16, 2013) (finding that no duty of care was owed where a servicer told a mortgagor that approval of a loan modification was imminent).

Recently, the Fourth District Court of Appeal considered a case similar to this one and addressed whether *Jolley*'s reasoning is applicable in the residential home loan context. See *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49 (2013). Richard Lueras sued Bank of America after it foreclosed on his home thirteen days after sending him a letter promising that no foreclosure sale would take place while Lueras was being considered for foreclosure avoidance programs. *Id.* at 55. Lueras had applied for a HAMP loan modification. In response, Bank of America offered to put him in a forebearance program that reduced his monthly payments; it also promised to consider whether "additional default resolution assistance" could be offered. *Id.* at 57. Lueras made monthly payments under the forebearance program for 10 months, during which time Bank of America did not work with him to implement a more permanent foreclosure alternative. *Id.* at 58. Lueras then submitted all information required to apply for a HAMP loan modification; while he was waiting for a response from Bank of America, the trustee, ReconTrust, served a notice of default and notice of trustee's sale. *Id.* Lueras alleged that at that point, Bank of America made an oral offer to modify his loan under HAMP, which he accepted. *Id.* at 58. He asserted that, subsequently, he received a letter stating that the bank had determined he was not eligible for a modification; when he called to inquire, the bank told him this was an error. *Id.* at 58-59. On May 6, 2011, he received another letter stating that Bank of America was reviewing his documents to determine whether he was eligible for a HAMP loan modification. *Id.* at 59. The letter stated that he would be notified whether the modification had been approved, whether he was not eligible for a loan modification, or whether the bank needed more information to make a decision. *Id.* When Lueras contacted the bank, he was told that the second letter had also been in error as his application

had already been approved.  *Id.*  Nonetheless, on May 18, 2011, the bank conducted a foreclosure sale.  *Id.*

The *Lueras* court first surveyed the law regarding a lender's duty of care to a borrower and then focused specifically on *Jolley*.  It held:

> "We disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives. . . .  We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.  A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct.  If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." *Id.* at 67.

Based on this analysis, the *Lueras* court concluded that Bank of America could not be held liable for negligence as a result of the loan modification discussions because "Lueras [had] not allege[d] [that] Bank of America . . . did anything wrongful that made him unable to make the original monthly loan payments.  Lueras did not allege Bank of America and ReconTrust caused or exacerbated his initial default by negligently servicing the loan.  To the contrary, he alleged his inability to make the payments was caused by financial hardship." *Id.* at 68.  The court held that Bank of America was not liable for failing to "follow through" on the agreement it had made with Lueras to modify his loan because the remedy for that failure "lies in breach of contract, not negligence." *Id.*

30

1    Another recent California Court of Appeal decision, by contrast, imposed a duty of care on

2    lenders that accept loan modification applications.  In *Alvarez v. BAC Home Loans Servicing, L.P.*,

3    228 Cal.App.4th 941, 948 (2014), the court held that a lender owed a duty to exercise reasonable

4    care in processing and reviewing plaintiffs' applications for loan modification.  The court noted the

5    apparent conflict between *Jolley* and *Lueras*, but focused the majority of its discussion on *Garcia*

6    *v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, *3 (N.D. Cal. May 10,

7    2010), in which the court concluded that a lender "arguably owed [p]laintiff a duty of care in

8    processing [p]laintiff's loan modification application, as at least five of the six [*Biakanja*] factors

9    weigh[ed] in favor of finding a duty of care."   The *Alvarez* court found *Garcia*'s reasoning

10   persuasive.  It stated:

11          "Here, because defendants allegedly agreed to consider modification of the plaintiffs'

12          loans, the *Biakanja* factors clearly weigh in favor of a duty.  The transaction was

13          intended to affect the plaintiffs and it was entirely foreseeable that failing to timely

14          and carefully process the loan modification applications could result in significant

15          harm to the applicants.  Plaintiffs allege that the mishandling of their applications

16          'caus[ed] them to lose title to their home, deterrence from seeking other remedies to

17          address their default and/or unaffordable mortgage payments, damage to their credit,

18          additional income tax liability, costs and expenses incurred to prevent or fight

19          foreclosure, and other damages.' . . . 'Although there was no guarantee the

20          modification would be granted had the loan been properly processed, the mishandling

21          of the documents deprived Plaintiff of the possibility of obtaining the requested

22          relief.'  Should plaintiffs fail to prove that they would have obtained a loan

23          modification absent defendants' negligence, damages will be affected accordingly,

24          but not necessarily eliminated."   *Alvarez*, 228 Cal.App.4th at 948-49 (internal

25          citations omitted).

26   As respects the fifth *Biakanja* factor, the court found it "highly relevant that the borrower's 'ability

27   to protect his own interests in the loan modification process [is] practically nil' and the bank holds

28   'all the cards.' "  *Id*. at 949 (citing *Jolley*, 213 Cal.App.4th at 900).  It held that a borrower's lack

1    of bargaining power, "coupled with conflicts of interest that exist in the modern loan servicing

2    industry provide a moral imperative that those with the controlling hand be required to exercise

3    reasonable care in their dealings with borrowers seeking a loan modification." *Id*. Finally, citing

4    *Jolley*, the court found the final *Biakanja* factor, the policy of preventing future harm, also "strongly

5    favor[ed] imposing a duty of care on [lenders]." *Id*. at 950 (citing *Jolley*, 213 Cal.App.4th at 903).

6

7        Given the differing outcomes in *Lueras* and *Alvarez*, it is clear that whether a residential

8    lender owes a duty of care to a borrower in connection with a residential loan modification

9    application is a subject on which the California Courts of Appeal disagree.

10       In *Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. Appx. 567, 569-70 (9th Cir. Mar. 13, 2014)

11   (Unpub. Disp.), the Ninth Circuit expressly held that *Jolley* was confined to construction lenders, and

12   cited *Lueras* with approval for the proposition that HSBC Bank did not owe a common law duty of care

13   to the plaintiff-borrower. See *id*. ("The district court did not err in dismissing Benson's negligence claim

14   against Ocwen and HSBC for failure to state a claim, because neither Ocwen nor HSBC owed Benson

15   a common law duty of care.  The duty of care imposed on construction lenders, does not apply in the

16   residential loan context").  Another panel of the Ninth Circuit reached the opposite conclusion, however.

17    See *Yau v. Deutsche Bank Nat. Trust Co. Americas*, 525 Fed. Appx. 606, 609 (9th Cir. May 24, 2013)

18   (Unpub. Disp.) (reversing the district court's dismissal with prejudice of residential borrowers'

19   negligence claim in light of *Jolley*).

20       California district courts too have reached differing conclusions.  Compare, e.g., *Johnson v. PNC*

21   *Mortgage*, __ F.Supp.3d __, 2015 WL 662261, *4 (N.D. Cal. Feb.12, 2015) ("Once PNC offered the

22   Johnsons an opportunity to modify their loan, it owed them a duty to handle their application with

23   ordinary care"); *Banks v. JP Morgan Chase Bank, N.A.*, No. LA CV14–06429 JAK (FFMx), 2014 WL

24   6476139, *12 (C.D. Cal. Nov. 19, 2014) ("Taken together, [California] cases establish that traditional

25   money-lending activity does not create a duty of care (*Nymark*), and that a loan modification is generally

26   deemed a traditional money-lending activity (*Lueras*).  They also support the conclusion that servicer

27   conduct during the modification negotiation process may create a special relationship and a resulting

28   duty of care (*Alvarez*)"); *Segura v. Wells Bank, N.A.*, No. CV–14–04195–MWF (AJWx), 2014 WL

4798890, *12 (C.D. Cal. Sept. 26, 2014) (a duty of care can arise if a lender offers a borrower the opportunity to apply for a modification and engages with the borrower concerning that application) with *Valencia v. Wells Home Mortgage Inc.*, No. C 14–3354 CW, 2014 WL 5812578, *7 (N.D. Cal. Nov.7, 2014) (holding that "[i]n the absence of any circumstances that would impose a duty of care on [d]efendant, [d]efendant had no duty of care to [p]laintiffs in reviewing their application for a HAMP modification"); *Colom v. Wells Home Mortgage, Inc.*, No. C–14–2410 MMC, 2014 WL 5361421, *3 (N.D. Cal. Oct. 20, 2014) (dismissing plaintiff's negligence claim alleging that defendant failed to "offer[ ][p]laintiff a loan modification" because "[a] lender [does] not have a common law duty of care to offer, consider, or approve a loan modification" (citations omitted)); *Williams v. Wells Fargo Bank, NA*, No. EDCV 13–02075 JVS (DTBx), 2014 WL 1568857, *7 (C.D. Cal. Jan. 27, 2014) ("The Court concludes . . . that loan modification – a renegotiation of the loan's terms – is so related to 'the key functions of a money lender' as to not give rise to an enforceable duty of care to the borrower").

The court finds those cases holding that *Jolley* is limited to construction lenders persuasive. Indeed, a second California appellate court adopted the *Lueras* court's view that *Jolley* is confined to the construction loan context.  See *Aspiras v. Wells Fargo Bank, N.A.*, 162 Cal.Rptr.3d 230, 242-43 (Cal. App. Aug. 21, 2013) (Unpub. Disp.) (holding, in a case involving the possible modification of a residential loan, that the reasoning in *Jolley* was dicta, that the circumstances underlying residential loans and construction loans are distinguishable, and that "the handling of loan modification negotiations or servicing is a typical lending activity that precludes imposition of a duty of due care").[40]  Accordingly, although not without doubt, the court concludes that a lender that agrees to consider a borrower's loan modification application does not act outside its conventional role as a money lender and does not owe a duty of care.  Accord *Carbajal v. Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG (PLAx), 2015 WL 2454054, *6 (C.D. Cal. Apr. 10, 2015) ("The California Supreme Court has not spoken

---

[40]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. CV 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

on this issue, and this Court agrees with the reasoning in *Lueras*.  The Court fails to discern how considering an application for the renegotiation of loan terms could fall outside the scope of a lender's 'conventional role as a lender of money.'").

To the extent Hernandez alleges, therefore, that defendants owed her a duty of care to process her loan modification application in a commercially reasonable manner, the court concludes that the claim fails, and must be dismissed.

In affirming dismissal of plaintiff's negligence claim, the *Lueras* court noted "that a lender . . . owe[s] a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale.  The law imposes a duty not to make negligent misrepresentations of fact."  *Id.* at 68-69.  On this basis, it granted leave to amend to allege a negligent misrepresentation claim because it found that Lueras could possibly allege that Bank of America negligently misrepresented the status of the application for the loan modification or the date, time, or status of the foreclosure sale.  *Id.*  Based on *Lueras*, the court will grant Hernandez leave to amend to plead a negligent misrepresentation claim, but dismisses her negligence claim with prejudice.

### 2.    Damages

Defendants also assert that Hernandez has not adequately alleged that any breach of duty caused her damage.  The court agrees.  To allege damages sufficiently, plaintiffs must plead that "they would have obtained a loan modification absent [Wells Fargo's] negligence" and/or that they suffered "other damages."  *Alvarez*, 228 Cal.App.4th at 949.  Hernandez does not allege she would have obtained a loan modification; to the contrary, she concedes "there was no guarantee that a modification would have been granted had the loan modification applications been properly processed."[41]  Because Hernandez has no right to a loan modification under California law, *Mabry*, 185 Cal.App.4th at 222-223, 231, and because she does not plead facts suggesting there was a reasonable likelihood that her loan modification application would have been approved absent defendants' purported negligence, her damages allegations are deficient.  See *Stiles v. Wells Fargo*

---

[41]FAC, ¶ 132.

1   *Bank*, No. CV 14-04169 DMR, 2014 WL 7146950, *7 (N.D. Cal. Dec. 15, 2014) (dismissing a

2   negligence claim where, *inter alia*, plaintiff did "not adequately allege[ ] that she suffered damages

3   as a result of any negligence on Defendant's part"); *Maomanivong v. Nat'l City Mortg. Co.*, No. CV

4   13-05433 DMR, 2014 WL 4623873, *16 (N.D. Cal. Sept. 15, 2014) (dismissing a negligence claim

5   where, *inter alia*, "there was no indication of the likelihood that her loan modification would have

6   been granted").  Nor are there any plausible allegations of "other damages" proximately caused by

7   defendants' negligence.  Although she maintains she suffered damage to her credit, "potential

8   additional income tax liability," and costs fighting foreclosure, she does not allege any facts to

9   support these legal conclusions.[42]   Cf. *Copeland v. Lehman Bros. Bank, FSB*, No.

10  09 CV 1774 WQH RBB, 2010 WL 2817173, at *4 (S.D. Cal. July 15, 2010) ("Even reading the

11  First Amended Complaint liberally, Plaintiff fails to plead non-conclusory factual allegations indicating

12  how he was damaged by the alleged failure to fully respond to the QWR," citing *Allen v. United Fin.*

13  *Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) ("Allen only offers the conclusory statement

14  that 'damages consist of the loss of plaintiff's home together with his attorney fees.'  He has not actually

15  attempted to show that the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss

16  of property appears to have been caused by his default)").  Consequently, even had Hernandez

17  adequately alleged that she was owed a duty of care, the court would have to dismiss her negligence

18  claim as deficiently pled.

19

20                                   **III.  CONCLUSION**

21        For the reasons stated, the court grants defendants' motion to dismiss with leave to amend.  See

22  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) ("Dismissal without leave to amend is

23  improper unless it is clear . . . that the complaint could not be saved by any amendment."); *California*

24  *ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673

25  (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing

26  *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Hernandez may file an amended complaint within twenty

27  _____

28        [42]*Id.*, ¶ 133.

                                          35

(20) days of the date of this order if she is able to remedy the deficiencies the court has noted.

Hernandez may not plead new claims. Should the scope of any amendment exceed the scope of leave to amend granted by this order, the court will strike the offending portions of the pleading under Rule 12(f). See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading");

1   see also *Barker v. Avila*, No. 2:09-cv-0001-GEB-JFM, 2010 WL 31701067, *1-2 (E.D. Cal. Aug. 11,

2   2010) (striking an amendment to a federal law claim where the court had granted leave to amend only

3   state law claims).[43]

4

5   DATED: June 25, 2015

6                                                   MARGARET M. MORROW
                                                    UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [43]Because defendants are similarly situated, as they did with respect to the instant motion, the

27   court directs them to file a single motion to dismiss any amended complaint.  Should defendants believe
     they require additional pages to address all of the arguments they desire to make, they may file an
28   appropriate application seeking permission to file an oversized brief.

37