1

2

3                                                    FILED: 10/29/2015

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10

11   MARIA ELENA HERNANDEZ, an          )   CASE NO. CV 15-01896 MMM (AJWx)
     individual,                        )
12                                      )   ORDER GRANTING DEFENDANTS'
                     Plaintiff,         )   MOTIONS TO DISMISS
13                                      )
              vs.                       )
14                                      )
     SELECT PORTFOLIO SERVICING,        )
15   INC., a Utah corporation; BANK OF  )
     AMERICA, N.A., a national banking  )
16   association; BANK OF NEW YORK      )
     MELLON, f/k/a BANK OF NEW          )
17   YORK, a Delaware corporation; and ALL )
     PERSONS UNKNOWN Claiming Any       )
18   Legal or Equitable Right, Title, Estate, )
     Lien or Interest in and to the Real Estate )
19   Property Known as 293 Bellafonte Court, )
     Camarillo, ca 93012,              )
20                                      )
                     Defendants.        )
21   _____ )

22          On February 6, 2015, Maria Elena Hernandez filed this action against Select Portfolio

23   Servicing, Inc. ("SPS"), Bank of America, N.A. ("BofA"), and various fictitious defendants in

24   Ventura Superior Court.[1] On March 13, 2015, SPS and BofA removed the action to federal court,

25   invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[2] On April 8, 2015, Hernandez

26   _____

27          [1]Notice of Removal ("Removal"), Docket No. 1 (Mar. 13, 2015), Exh. 1 ("Complaint").

28          [2]Removal at 1.

filed a first amended complaint, adding Bank of New York Mellon ("BNYM") as a defendant and alleging claims for (1) wrongful initiation of foreclosure proceedings in violation of California Civil Code § 2924(a)(6); (2) dual tracking in violation of California Civil Code § 2923.6; (3) quiet title; (4) declaratory relief under California Code of Civil Procedure § 1060; (5) failure to exercise due diligence before recording a notice of default in violation of California Civil Code § 2923.5; (6) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200; and (7) negligence.[3]

      On April 22, 2015, defendants filed a motion to dismiss the first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[4] which the court granted on June 25, 2015 with leave to amend.[5]  On July 15, 2015, Hernandez filed a second amended complaint alleging (1) wrongful initiation of foreclosure proceedings in violation of California Civil Code § 2924(a)(6); and (2) negligent misrepresentation.[6]  Defendants moved to dismiss the complaint on August 3, 2015.[7]  Hernandez opposed the motion on October 9, 2015.[8]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument; the hearing calendared for November 2, 2015, is therefore vacated, and the matter taken off calendar.

---

[3]First Amended Complaint ("FAC"), Docket No. 14 (Apr. 8, 2015).

[4]Motion to Dismiss First Amended Complaint ("Motion"), Docket No. 18 (Apr. 22, 2015). See also Reply in Support of Motion to Dismiss

[5]Order Granting Defendants' Motion to Dismiss ("Order"), Docket No. 27 (June. 25, 2015), at 35.

[6]Second Amended Complaint ("SAC"), Docket No. 32 (Jul. 15, 2015).

[7]Defendants' Motion to Dismiss Second Amended Complaint ("Motion"), Docket No. 36 (Aug. 3, 2015).  See also Reply in Support of Defendants' Notice of Motion and Motion to Dismiss Case ("Reply"), Docket No. 43 (Oct. 16, 2015).

[8]Memorandum in Opposition to Motion to Dismiss Case ("Opposition"), Docket No. 42 (Oct. 9, 2015).

# I.  FACTUAL BACKGROUND

Hernandez contends she is the owner of real property located at 293 Bellafonte Court, Camarillo, California 93012.[9]  She allegedly purchased the property in 2006, using the proceeds of a $400,000 loan from Countrywide Credit that was secured by a deed of trust on the property.[10]  Hernandez asserts that her monthly payment at the time she received the loan was $2,083.33.[11]  In 2009, BofA purportedly acquired the loan and deed of trust from Countrywide Credit,[12] and on March 1, 2012, unilaterally increased her monthly mortgage payment to $2,968.51.[13]  Because she could not afford the increased payment, Hernandez allegedly sought a modification of her loan; she alleges that over the next eleven months, BofA repeatedly requested documents from her, but never granted her loan modification application.[14]  On March 12, 2012, Hernandez was purportedly told that she would only qualify for a loan modification if she stopped making monthly payments.[15]  Because she feared defaulting on the loan, however, Hernandez kept making payments, despite the financial difficulty of doing so.[16]

Hernandez asserts that on May 14, 2012, the deed of trust on her property was assigned to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWALT Alternative Loan Trust 2007-HY7C Mortgage Pass-through

---

[9]SAC, ¶ 11.

[10]*Id.*, ¶ 12.

[11]*Id.*, ¶ 13.

[12]*Id.*, ¶ 14.

[13]*Id.*, ¶ 15.

[14]*Id.*

[15]*Id.*, ¶ 16.  Hernandez does not plead who made this statement or whether the individual was affiliated with either defendant.

[16]*Id.*

Certificates, Series 20070HY7C.[17]  Hernandez contends the transfer was improper and ineffective because Mortgage Electronic Registrations Systems, Inc. ("MERS"), the assignor named on the assignment of deed of trust, was not the lender or beneficiary of the deed of trust.[18]

In approximately February 2013, the servicing of Hernandez's loan was purportedly transferred to SPS.[19]  Hernandez contends that, on August 23, 2013, Michael Wickman, an SPS representative, called to inform her that she did not qualify for a loan modification because she needed to have a monthly income of $2,500 to qualify.[20]  Wickman purportedly represented that Hernandez might qualify for an "in-house program" if she were able to make a down payment.[21]  In approximately October 2013, Hernandez allegedly received approval from her daughter to begin receiving monthly income of $2,500, the amount purportedly identified by Wickman.[22]  As a result, Hernandez allegedly began to compile the paperwork necessary to submit an updated loan modification application.[23]

On January 17, 2014, a notice of default was recorded against the property.[24]  Less than a month later, on February 10, 2014, Hernandez allegedly submitted a complete first lien loan modification application to SPS, which SPS purportedly accepted.[25]  Over the next two months, Hernandez's loan representative, Nohemi Gomez, was allegedly in continual communication with

---

[17]*Id.*, ¶ 17.

[18]*Id.*

[19]*Id.*, ¶ 18.

[20]*Id.*, ¶ 19.

[21]*Id.*

[22]*Id.*, ¶ 20.

[23]*Id.*

[24]*Id.* ¶ 21.

[25]*Id.* ¶ 22.  Based on the remainder of the complaint, it is apparent that Hernandez means that SPS accepted receipt of the application, not that it approved the loan modification.

SPS regarding the loan modification application.[26]  Hernandez asserts that SPS never advised Gomez that the application was in any way incomplete.[27]  Yet on April 14, 2014, Gomez purportedly received a letter postmarked April 3, 2014, which requested additional documents in connection with the modification application.[28]  Hernandez purportedly requested an extension to submit the requested documentation, which SPS allegedly granted.  She asserts the requested documentation was thereafter timely submitted.[29]

On April 18, 2014, SPS purportedly recorded a notice of trustee sale while her loan modification application was under review, and before any decision respecting it had been made.[30]  The notice of trustee sale identifies National Default Servicing Corporation ("NDSC") as  the trustee.[31]  Hernandez alleges that the notice was therefore ineffective because NDSC was never substituted as trustee.[32]  On May 6, 2014, SPS allegedly acknowledged receipt of the supplemental documents Hernandez had submitted;[33] on May 30, it purportedly sent her a letter stating that although the application was complete, it was "not in the investor's financial interest to modify the loan."[34]  An SPS representative allegedly told Hernandez that her income was still not sufficient to justify modification of the loan.[35]  Hernandez asserts that this information conflicted

---

[26]*Id.*, ¶ 23.

[27]*Id.*

[28]*Id.*, ¶ 24.

[29]*Id.*

[30]*Id.* ¶ 25.

[31]*Id.*; see also *Id.*, Exh. 4 (Notice of Trustee Sale).

[32]*Id.* ¶ 26.

[33]*Id.* ¶ 24.

[34]*Id.*, ¶ 27.

[35]*Id.*

with what she had been told by Wickman.[36]  She also asserts that although the denial letter was dated May 30, 2014, she did not receive it until June 4, 2015.[37]

On June 3, 2014, SPS purportedly sent Hernandez a letter stating that she was not eligible for a foreclosure avoidance option because a foreclosure sale date had been set within the next seven days.[38]  Hernandez alleges that this letter contradicted the earlier letter she had received and was unlawful because she was entitled by statute to an appeal period after her loan modification application was denied.[39]  On June 9, 2014 Gomez purportedly appealed the loan modification denial.[40]  On June 16, 2014, SPS allegedly sent a letter stating that it needed additional documents to conduct the review.[41]  It sent another letter requesting additional documents on July 24, 2014.[42]  Because she had received so many letters from SPS, which were purportedly inconsistent both with each other and with statements made by SPS's representatives, Hernandez was allegedly unable to determine how best to proceed.[43]

On July 24, 2014, SPS allegedly sent Hernandez a denial letter stating that there were no loan modification options available to her; the letter purportedly asserted that the denial was in part based on the fact that Hernandez's income was $0.[44]  This conclusion allegedly contradicted SPS's May 2014 analysis, which concluded that her income was $3,802.00.[45]  The same day the

---

[36]*Id.*

[37]*Id.*, ¶ 29.

[38]*Id.*, ¶ 28.

[39]*Id.*

[40]*Id.*, ¶ 30.

[41]*Id.*, ¶ 31.

[42]*Id.*, ¶ 32.

[43]*Id.*, ¶ 31.

[44]*Id.*, ¶ 33.

[45]*Id.*

denial letter was sent, SPS purportedly reopened Hernandez's file and allowed her to submit additional documents.[46]   Between August 8 and December 4, 2014, it allegedly requested additional documents from Hernandez at least ten times; Hernandez asserts she complied with each request.[47]

On December 23, 2014, and again on January 9, 2015, an SPS representative told Hernandez her application was complete, but that a foreclosure sale had been scheduled for January 20, 2015.[48] On January 14, 2015, an SPS representative allegedly advised Hernandez that she could not be considered for a loan modification because a foreclosure sale had been scheduled to take place within the next seven days.[49] On January 15 and 21, 2015, Hernandez was told that her loan modification application had been denied because she lacked sufficient income to qualify for a modification.[50]

Hernandez contends that between October 11, 2014 and January 15, 2015, SPS assigned at least eight persons as "points of contact" respecting her loan; she alleges this violates California law requiring a single point of contact.[51]

## II.  DISCUSSION

### A.    Defendants' Requests for Judicial Notice

Because Rule 12(b)(6) review is confined to the face of the complaint, the court typically does not consider material outside the pleadings (e.g., facts presented in briefs, affidavits, or discovery materials) in deciding such a motion. *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec.*

---

[46]*Id.*, ¶ 34.  Hernandez does not allege how she learned that her file had been reopened, or if that information was communicated to her by an SPS representative.

[47]*Id.*, ¶ 35.

[48]*Id.*, ¶ 36.

[49]*Id.*, ¶ 37.

[50]*Id.*, ¶ 38.

[51]*Id.*, ¶ 39.

*Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996). It may, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In addition, the court can consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence. *Id.* at 688–89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").[52] The court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or by proper subjects of judicial notice. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); see also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

Defendants ask the court to take judicial notice of a substitution of trustee dated January 13, 2014 and recorded on January 17, 2014.[53] Hernandez does not oppose the request. The substitution of trustee was recorded in the Ventura County Recorder's Office and bears a document number and filing stamp.[54] It bears directly on Griffin's allegations and claims. Other courts have taken judicial notice of such documents as public filings. See *Velazquez v. GMAC*

---

[52]Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[53]Request for Judicial Notice in Support of Defendants' Motion to Dismiss ("RJN"), Docket No. 37 (Aug. 3, 2015).

[54]*Id.*, Exh. A.

*Mortg. Corp.*, 605 F.Supp.2d 1049, 1057–58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Servs., Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortg. Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).

Consequently, the court grants defendants' request for judicial notice.

## B.   Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

9

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

## C.   Whether Hernandez's Civil Code § 2924(a)(6) Claim Must Be Dismissed

Defendants contend that Hernandez's Civil Code § 2924(a)(6) claim must be dismissed for a variety of reasons. Section 2924(a)(6) provides:

> "No entity shall record or cause a notice of default to be recorded or otherwise
> initiate the foreclosure process unless it is the holder of the beneficial interest under
> the mortgage or deed of trust, the original trustee or the substituted trustee under
> the deed of trust, or the designated agent of the holder of the beneficial interest.
> No agent of the holder of the beneficial interest under the mortgage or deed of trust,
> original trustee or substituted trustee under the deed of trust may record a notice of
> default or otherwise commence the foreclosure process except when acting within
> the scope of authority designated by the holder of the beneficial interest." CAL.
> CIV. CODE § 2924(a)(6).

Hernandez's wrongful foreclosure claim alleges that the parties that initiated foreclosure proceedings[55] against her property lacked the authority to do so.[56]  California law provides that a "trustee, mortgagee, or beneficiary or any of their authorized agents" may conduct the foreclosure process.  CAL. CIV. CODE § 2924(a)(1).  Furthermore, a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  CAL. CIV. CODE § 2924b(4).  Based on the notice of default and election to sell and the notice of trustee's sale – both of which are attached to Hernandez's complaint – NDSC foreclosed on the property as trustee under the deed of trust.[57]

Section 2924 does not require that the party initiating foreclosure proceedings have a beneficial or economic interest in the note in order to foreclose.  See *In re Cedano*, 470 B.R. 522, 530 (9th Cir. BAP 2012) ("Under Cal. Civ. Code § 2924, the party initiating foreclosure proceedings is not required to have a beneficial or economic interest in the note in order to foreclose"); *McLaughlin v. Wells Fargo Bank, N.A.*, No. SA CV 12-1114-DOC, 2012 WL 5994924, *6 (C.D. Cal. Nov. 30, 2012) ("There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose.  Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure proceedings.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale," quoting *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010)); see also *Caovilla v. Wells Fargo Bank, N.A.*, No. 13 CV 1003 JSC, 2013 WL 2153855, *4 (N.D. Cal. May 16, 2013) (same).  As the statute makes clear, a "trustee, mortgagee, or beneficiary, or any of their authorized agents" can commence non-judicial foreclosure proceedings.  See CAL. CIV.

---

[55]The second amended complaint indicates that a trustee's sale has not yet occurred.  (SAC, ¶ 48).

[56]SAC, ¶ 45.

[57]*Id.*, Exhs. 3, 4.

11

CODE § 2924(a)(1).  Hernandez argues that NDSC lacked authority to foreclose because "upon information and belief, no substitution of trustee was ever recorded for . . . National Default Servicing Corporation. . . .  The Notice of Default was therefore ineffective."[58]

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it was conducted regularly and fairly.  This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity.  It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity." *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258 (2005) (citations and quotation marks omitted); see also *Knapp v. Doherty*, 123 Cal.App.4th 76, 86 n. 4 (2004) ("A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption by pleading and proving an improper procedure and the resulting prejudice" (quotation marks omitted)).

Defendants argue first that the wrongful foreclosure claim must be dismissed because Hernandez does not have standing to pursue the claim.[59]  They also argue that dismissal is appropriate because Hernandez was not prejudiced by any lack of authority to foreclose.[60]  Several "courts have held that borrowers who were not parties to the assignment of their deed – and whose rights were not affected by it – lack[ ] standing to challenge the assignment's validity because they [cannot] allege[ ] a concrete and particularized injury that is fairly traceable to the challenged assignment."  *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12–cv–1873–IEG, 2012 WL 6091412, *4 (S.D. Cal. Dec. 6, 2012) (quotation omitted); see *Siliga v. Mortg. Elec. Reg. Sys., Inc.*, 219 Cal.App.4th 75, 85 (2013) ("The Siligas do not dispute that they are in default under the note.  The assignment of the deed of trust and the note did not change the Siligas' obligations

---

[58]*Id.*, ¶ 45(b).  Hernandez also argues that SPS was never substituted as trustee.  The notice of default attached to the complaint, however, makes clear that it was NDSC – not SPS – that filed the notice of default.  (See *id.*, Exh. 3).

[59]Motion at 5.

[60]Motion at 9 n. 3; Reply at 4.

under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances.  Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment"); see also *Marques*, 2012 WL 6091412 at *5 ("The validity of the assignment does not affect whether the borrower owes its obligations, but only to whom the borrower is obliged.  Regardless of which party held the Deed of Trust, Plaintiffs were still obligated to make payments.  The only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice'" (internal quotation marks and brackets omitted)); see also *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 514–15 (2013) ("[E]ven if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged" (citations omitted)).

Other courts have concluded, however, that a third party has standing to challenge an assignment that is void as opposed to voidable.  *Banares v. Wells Fargo Bank, N.A.*, No. C-13-4896 EMC, 2014 WL 985532, *3 (N.D. Cal. Mar. 7, 2014) ("A third party to an assignment lacks standing to challenge its effectiveness unless the assignment is void, as opposed to voidable"); *Cerezo v. Wells Fargo Bank, N.A.*, No.: 13-1540 PSG, 2013 WL 4029274, *8 (N.D. Cal. Aug. 6, 2013) ("As expressed by the court in *Tamburri*, 'the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default.'  The prospect of wrongful foreclosure stemming from the issuance of foreclosure not grounded in a valid, beneficial interest is thus sufficient"); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 6294472, *14 (N.D. Cal. Dec. 15, 2011) ("Thus, assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default"); *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal.App.4th 1079, 1095 (2013) ("[A] borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment").

1       Ultimately, the court need not grapple with this split in authority.  This is because even if

2 Hernandez has standing to challenge NDSC's authority to foreclose on the property, NDSC clearly

3 possessed such authority.  The court has taken judicial notice of a recorded substitution of trustee

4 document in which NDSC was substituted as trustee under the deed of trust.[61]  Hernandez states

5 that she was previously unaware of the existence of the substitution of trustee, but does not appear

6 to contest its validity or effectiveness.[62]  Although the recorded substitution of trustee directly

7 contradicts Hernandez's allegation that NDSC was never substituted as trustee,  the court is "not

8 required to accept as true conclusory allegations which are contradicted by documents referred to

9 in the complaint" or by proper subjects of judicial notice.  *Sprewell*, 266 F.3d at 988; *Steckman*,

10 143 F.3d at 1295.  See *McLaughlin*, 2012 WL 5994924 at *6 ("[Section 2924] broadly allows a

11 trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure

12 proceedings").  Hernandez's Civil Code § 2924(a)(6) claim must therefore be dismissed.

13     **D.**     **Whether Hernandez's Negligent Misrepresentation Claim Must Be Dismissed**

14       Defendants next move to dismiss Hernandez's negligent misrepresentation claim.  "The

15 elements of negligent misrepresentation include: (1) misrepresentation of a past or existing

16 material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce

17 another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on

18 the misrepresentation by the party to whom it was directed, and (5) resulting damage."  *Glenn K.*

19 *Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir. 2001).

20       "Claims for . . . negligent misrepresentation must meet the heightened pleading

21 requirements of Rule 9(b)."  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d

22 1086, 1093 (C.D. Cal. 1999); see also *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp.

23 1053, 1058 (N.D. Cal. 1991).  Under Rule 9(b), "a party must state with particularity the

24 circumstances constituting fraud or mistake."  FED.R.CIV.PROC. 9(b).  "Rule 9(b) demands that,

25 when averments of fraud are made, the circumstances constituting the alleged fraud be specific

26 ────────────────

27   [61]RJN, Exh. A.

28   [62]Opposition at 6.

enough to give defendants notice of the *particular* misconduct so that they can defend against the charge. . . ." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added and internal citations omitted).

Under Rule 9(b), allegations of negligent misrepresentation must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); see also *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (holding that Rule 9(b) requires a pleader to set forth the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation").

Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity. See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Swartz*, 476 F.3d at 764 ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' 'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong,'" citing *Edwards*, 356 F.3d at 1066, and *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint

[must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted)).

Hernandez alleges three negligent misrepresentations.  She first asserts that "[o]n or about August 23, 2013, one Michael Wickman with Defendant SPS called Plaintiff and said she didn't qualify for an 'in-house' modification program because she needed to have income of $2,500 per month."[63]  Second, she alleges that "[b]etween February 10 and April 14, 2014, Plaintiff's loan representative, Ms. Nohemi Gomez, was in constant communication with SPS about Plaintiff's then-complete loan modification application.  She was not informed that the application was in any way incomplete; and Defendants thereby represented that the application was complete."[64]  Third, Hernandez pleads that "[o]n or about July 24, 2014, SPS sent Plaintiff a denial letter stating there were no loan modification options available to her.  In [its] analysis, SPS concluded that Plaintiff's income was $0.00.  This contradicted the analysis SPS performed in May, 2014, at which time SPS concluded that Plaintiff's income was $3,802.00."[65]  Notably, all of the alleged misrepresentations concern statements made by SPS or by SPS's representatives.  No mention is made of any statements made by BofA.  Indeed, all of the alleged statements were made more than a year after BofA transferred its interest in the loan to BNYM on May 14, 2012.  Hernandez's complaint pleads no facts that would support attributing SPS's alleged negligent misrepresentations to BofA.[66]  Consequently, the court dismisses the negligent misrepresentation claim against BofA.

---

[63]SAC, ¶ 55.

[64]Id., ¶ 60.

[65]Id., ¶ 65.

[66]In her opposition, Hernandez argues that BofA should be held liable for "each and every cause of action" in the second amended complaint because BofA "created this entire mess originally by dramatically and unilaterally raising Plaintiff's monthly payments to an amount that she simply could not afford." (Opposition at 5).  Hernandez, however, has not pled a claim based on the increase in mortgage payments.  Moreover, she does not plausibly allege any relationship between the mortgage rate increase and SPS's purported misrepresentations.

The court examines below the misrepresentations alleged to determine whether the claim must be dismissed against SPS as well.

### 1.   Misrepresentation 1: Wickman's Statement That Hernandez Did Not Qualify for a Modification

Defendants argue that Hernandez's negligent misrepresentation claim fails to the extent based on Wickman's purported statement because she has failed plausibly to plead that the statement was false.  The court agrees.  Hernandez alleges that Wickman told her in August 2013 that she needed an income of $2,500 per month to qualify for a loan modification.  She asserts that when her loan modification application was denied on May 30, 2014, an SPS representative advised that her income was too low, despite the fact that she was allegedly receiving $2,500 per month.[67]  Accepting these allegations as true, Hernandez fails to explain why they give rise to an inference that the original statement was false.  Hernandez's loan modification application was denied almost a year after Wickman made the purported misrepresentation.  In the interim, the income requirement for a loan modification may have increased across the board for all borrowers, or may have increased for Hernandez due to changes in the amount of her arrearages or other circumstances of her loan.  The mere fact that two seemingly inconsistent statements were made months apart does not plausibly suggest falsity when no facts are pled concerning the change or lack thereof in the surrounding circumstances.  See *Glen Holly*, 100 F.Supp.2d at 1094 ("[A] plaintiff does not satisfy the falsity requirement by merely asserting that a company's later revelation of bad news means that 'earlier, cheerier' statements must have been false.  In fact, these types of allegations are called 'fraud by hindsight' and they do not establish liability," quoting *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994), and *In re VeriFone Securities Litigation*, 784 F.Supp. 1471, 1486 (N.D. Cal. 1992)).

Hernandez counters that the falsity of the original statement regarding the income requirement is demonstrated by the fact that the letter accompanying denial stated that her loan modification application had been denied because it was "not in the investor's financial interest

---

[67]See SAC, ¶ 20.

to modify the loan."[68]   Hernandez seems to imply that a rejection on this ground is inconsistent with a rejection for insufficient income.  This is not accurate, however.  A lender might elect to deny a loan modification to a borrower with insufficient income because it concludes the borrower will default irrespective of the modification.  In such a case, the lender's denial would be both due to insufficient income *and* because a modification would not be in the lender's financial interest. Because the two statements are not necessarily inconsistent, they fail plausibly to plead falsity. See *Blake v. Dierdorff*, 865 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires "specific descriptions of the representations made [and] the reasons for their falsity").

Even had falsity been adequately alleged, moreover, the court would have to dismiss the negligent misrepresentation claim to the extent based on Wickman's purported misrepresentation claim because Hernandez has not alleged facts plausibly suggesting that she detrimentally relied on the representation.  Hernandez alleges that "[a]s a result of Defendants' misrepresentations, Plaintiff continued foregoing other necessities and making exorbitant payments on her loan, and did not explore other options to resolve the problem, such as sale of the property, all to her detriment."[69]  These allegations are not legally sufficient.  The performance of a contractual obligation – such as making a monthly mortgage payment – does not constitute a detriment.  See *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 79 (2013) ("Continuing to make payment on [a] loan . . . does not constitute detrimental reliance because Lueras already had the obligation to make those payments"); *Ortiz v. America's Servicing Co.*, No. EDCV 12–191 CAS (SPx), 2012 WL 2160953, *7 (C.D. Cal. June 11, 2012) ("Merely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Newgent v. Wells Fargo Bank, N.A.*, No. 09-CV-1525 WQH, 2010 WL 761236, *7 (S.D. Cal. Mar. 2, 2010) ("First, Plaintiff alleges that she made a payment that she would not have made if she did not believe Wells Fargo was renegotiating her mortgage.  Because Plaintiff

---

[68]*Id.*, ¶ 56.

[69]*Id.*, ¶ 59.

was already legally obligated to make payments on her mortgage, the Court concludes that the payment in reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental").

As for the allegation that Hernandez detrimentally relied by foregoing other options to avoid foreclosure, she has failed to plead facts plausibly showing that she suffered actual detriment. Although Hernandez pleads that she might have sold the property or taken some other action had she not relied on the statement regarding the income requirement, a sale of the property is the only form of relief she identifies. She does not plead facts suggesting that a sale of the property would have permitted her to avoid the damage she purportedly suffered as a result of defendants' conduct. Nor does she plead that any of the other unidentified alternatives to which she alludes would have permitted her to avoid such damage.[70] See *Nguyen v. PennyMac Loan Servs., LLC*, No. SACV 12–01574 CJC (ANx), 2012 WL 6062742, *8 (C.D. Cal. Dec. 5, 2012) ("[P]laintiff does not sufficiently allege detrimental reliance. The Complaint contains only conclusory statements that Plaintiff failed to file for bankruptcy or 'investigate' other 'possible scenarios to stave off impending foreclosure.' Such general allegations of detrimental reliance are insufficient to plead promissory estoppel, and fail to meet even the basic pleading standard of Rule 8 and *Twombly*. Plaintiff does not allege that he was induced to take some specific action, that he actually changed his position in reliance on Defendants' purported promises, or that other possible workout options he might have pursued would have been successful"); *Mehta v. Wells Fargo Bank, N.A.*, No. 10CV944 JLS, 2011 WL 1157861, *2 (S.D. Cal. Mar. 29, 2011) ("Plaintiff attempts to plead reliance by alleging that he would have pursued other means to avoid foreclosure had Wells Fargo not promised to delay the sale. In support, Plaintiff identifies several means – tendering funds to cure the default, obtaining a temporary restraining order, and seeking bankruptcy protection. What Plaintiff has not alleged, however, is whether he realistically could

---

[70]Although Hernandez alleges that she was damaged because she was required to forego "other necessities" and make exorbitant payments on the loan (see *id.*, ¶ 59), she pleads no facts suggesting that she would have recouped her out-of-pocket losses had she sold the property or pursued other options to avoid foreclosure.

1    have pursued these options three business days before the sale.  The SAC does not allege any facts

2    suggesting that Plaintiff would have been successful in taking legal action"); *Newgent*, 2010 WL

3    761236 at *7 ("Plaintiff alleged[ ] she failed to take legal action to delay the trustee's sale because

4    she believed Wells Fargo had already agreed to delay the sale in exchange for her $2,500.77

5    payment.  Plaintiff does not, however, allege facts that could establish that Plaintiff would have

6    been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession

7    of the home").

8        For all of these reasons, the court grants defendants' motion to dismiss the negligent

9    misrepresentation claim to the extent based on Wickman's alleged misrepresentation.

10                   **2.    Misrepresentation 2: Failure to Disclose that the Loan Application was**

11                           **Incomplete**

12       Hernandez also bases her negligent misrepresentation claim on the fact that her

13   representative – Nohemi Gomez – "was not informed that the [loan modification] application was

14   in any way incomplete" between February and April 2014.[71]  She asserts that this failure to

15   disclose constituted an implicit representation that the application was complete.[72]

16       Although captioned a negligent misrepresentation claim, it is apparent that Hernandez in

17   fact alleges a negligent omission or negligent implied misrepresentation.  Under California law,

18   negligent misrepresentation "requir[es] a 'positive assertion of fact.'  An 'implied' assertion or

19   representation is not enough." *Wilson v. Century 21 Great Western Realty*, 15 Cal.App.4th 298,

20   306 (1993) (quoting *Blankenheim v. E.F. Hutton & Co.*, 217 Cal.App.3d 1463, 1472–73 & n. 6

21   (1990)); see also *Zamani v. Carnes*, 59 Fed. Appx. 220, 2003 WL 1459321, *1 (9th Cir. Mar.

22   18, 2003) (Unpub. Disp.) ("We affirm the district court's grant of summary judgment to the

23   Carneses on the claim for negligent misrepresentation.  The Zamanis have failed to demonstrate

24   that the Carneses made a 'positive assertion' that there was no asbestos in the building"); *Apollo*

25   *Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007) (stating with

26   _____

27       [71]*Id.*, ¶ 60.

28       [72]*Id.*

respect to a negligent misrepresentation claim that "a positive assertion is required; an omission or an implied representation is not enough"); *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282, 291 n.6 (2004) ("The demurrer to Vega's cause of action for negligent misrepresentation was properly sustained by the trial court, since such a claim requires a positive assertion").

Furthermore, even if a negligent misrepresentation claim could be based on an implied misrepresentation, Hernandez fails plausibly to plead detrimental reliance.  Hernandez alleges in conclusory fashion the same types of detrimental reliance she pleads with respect to the first representation – namely that she "continued foregoing other necessities and making exorbitant payments on her loan, and did not explore other options to resolve the problem, such as a sale of the property, all to her detriment."[73]  For the reasons stated above, this is insufficient to allege a plausible negligent misrepresentation claim.

### 3.   Misrepresentation 3: Representation that Hernandez's Income was $0

Hernandez alleges finally that in a July 14, 2014 letter, "SPS concluded that Plaintiff's income was $0.00.  This contradicted the analysis SPS performed in May, 2014, at which time SPS concluded that Plaintiff's income was $3,802.00."[74]  She alleges SPS had no reasonable basis for believing that the representation was true because her "income had not changed between May and July, 2014."[75]

Hernandez could not justifiably have relied on a false statement that she had no income as she knew how much income she received every month.  Earlier in the complaint, Hernandez alleges that in October 2013, she began to receive $2,500 per month.  She thus clearly had knowledge of her income, and would have had no reason to rely on SPS's allegedly erroneous statement.  See *Woods v. Google, Inc.*, 889 F.Supp.2d 1182, 1196 (N.D. Cal. 2012) ("Reasonableness of reliance is ordinarily a question of fact.  However, under California law,

---

[73]*Id.*, ¶ 59.

[74]*Id.*, ¶ 65.

[75]*Id.*, ¶ 66.

'whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts," quoting *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991)).

Hernandez may intend to assert that SPS wrongfully denied her loan modification application because *it* relied on an incorrect statement of her income. This does not state an actionable negligent misrepresentation claim, however. To the extent Hernandez's actual claim is negligence, as opposed to negligent misrepresentation, she has no viable cause of action for the reasons discussed by the court in its prior order. See *Lueras*, 221 Cal.App.4th at 67 (concluding that loan servicers do not owe a duty of care to borrowers in the processing of loan modification applications).

Consequently, the court grants defendants' motion to dismiss Hernandez's negligent misrepresentation claim in its entirety.

## III.  CONCLUSION

For the reasons stated, the court grants defendants' motion to dismiss. The wrongful foreclosure claim against BofA is dismissed with prejudice, as it is apparent BofA had no involvement with the property or the loan at the time foreclosure proceedings were initiated. *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The claim against the remaining defendants is dismissed without prejudice.

Hernandez's negligent misrepresentation claim is dismissed without prejudice as to all defendants. Although all misrepresentations alleged in the second amended complaint were made by SPS, the court cannot be certain that Hernandez is unable plausibly to allege misrepresentations by the other defendants during their involvement with the loan. See *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment").

1    Hernandez may file an amended complaint within twenty (20) days of the date of this order

2    if she is able to remedy the deficiencies the court has noted.  She is cautioned, however, that if

3    she is unable to plead viable claims in any amended complaint, the court will likely conclude that

4    she cannot do so, and dismiss her claims with prejudice.

5    Hernandez may not plead new claims.  Should the scope of any amendment exceed the

6    scope of leave to amend granted by this order, the court will strike the offending portions of the

7    pleading under Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading

8    an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court

9    may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading

10   or, if a response is not allowed, within 21 days after being served with the pleading"); see also

11   *Barker v. Avila*, No. 2:09-cv-0001-GEB-JFM, 2010 WL 31701067, *1-2 (E.D. Cal. Aug. 11,

12   2010) (striking an amendment to a federal law claim where the court had granted leave to amend

13   only state law claims).[76]

14

15   DATED: October 29, 2015

16                                                                    MARGARET M. MORROW
                                                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26   [76]Because defendants are similarly situated, as they did with respect to the instant motion,
     the court directs them to file a single motion to dismiss any amended complaint.  Should

27   defendants believe they require additional pages to address all of the arguments they desire to

28   make, they may file an appropriate application seeking permission to file an oversized brief.